Susan N. Goodman
Texas Bar No. 24117585
PIVOT HEALTH LAW, LLC
P.O. Box 69734
Oro Valley, Arizona 85737
sgoodman@pivothealthaz.com
message: (520) 744-7061
*Patient Care Ombudsman, pro hac vice*

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| IN RE: | Jointly Administered Under |
|---|---|
| REMARKABLE HEATHCARE OF CARROLLTON LP; EIN: 5960 | Case No: 23-42098-btr |
| REMARKABLE HEALTHCARE OF DALLAS, LP; EIN: 3418 | Chapter 11 – Subchapter V |
| REMARKABLE HEALTHCARE OF FORT WORTH, LP; EIN: 1692 | |
| REMARKABLE HEALTHCARE OF SEGUIN, LP; EIN: 4566 | |
| REMARKABLE HEALTHCARE, LLC, EIN: 5142 DEBTORS. | |

**PATIENT CARE OMBUDSMAN FIRST REPORT**
**Seguin Location**

Pursuant to 11 U.S.C. § 333 of the United States Bankruptcy Code (the "Code") and the court's December 5, 2023, *Order Granting United States Trustee's Unopposed Motion for Order Directing Appointment of Patient Care Ombudsman* (the "**Appointment Order**") [Docket No. 57], Susan N. Goodman was appointed to serve as the Patient Care Ombudsman ("**PCO**") for each of the four healthcare facility Debtors in these jointly administered cases.[1]

---

[1] The *Notice of Appointment of Patient Care Ombudsman* (the "**Appointment Notice**") [Docket No. 58] was filed with the court the same date of the Appointment Order.

In the *United States Trustee's Unopposed Motion for Order Directing the Appointment of Patient Care Ombudsman* (the "**Appointment Motion**") [Docket No. 44], PCO was directed to monitor the care provided to patients/residents of the Debtors and report to the court no later than thirty (30) days after the lodging of the Appointment Order. The Appointment Notice included PCO's curriculum vitae and other supporting documentation to support her competence to serve as the PCO. These pleadings are incorporated by reference herein. Of note, while PCO's site visit is guided by the regulations/tools utilized by certifying agencies and auditors, PCO does not certify the Debtors' compliance with any state or federal licensure standards.

Shortly after the lodging of the Appointment Order and Appointment Notice, PCO engaged in initial site visits at each of the four Debtors' locations. PCO comes now and files her first report for the Remarkable Healthcare of Seguin, LLP location ("**Debtor**" or "**Seguin**").

## SUMMARY OF FINDINGS

The standard for PCO's assessment under 11 U.S.C. §333(b) is whether the bankruptcy is causing significant decline or material compromise to resident care. While PCO did not observe, on the date of her site visit, concerns that were so immediately concerning as to trigger the need for an immediate report under §333(b)(3), PCO's assessment is that pre-petition stressors for this and the other Debtors' facilities have not been relieved enough to a level to stabilize resident care delivery across a typical Subchapter V reorganization process timeline. Without an immediate influx of additional staffing to relieve the shortages reported to PCO, continued resignations may occur and safe delivery of clinical services will be challenged.

Given the recent resignation of the Administrator at this facility, the continued staffing challenges, the concerns expressed by staff in various departments and at various levels of the organization, and the turnover that has occurred in nursing leadership roles, PCO would not be comfortable waiting a full sixty days for a second site visit. Ideally, a second visit would be planned for early-to-mid January 2024.

Before taking this assignment, PCO spoke with counsel for the secured lender, counsel for the landlord, the Subchapter V Trustee, counsel for the Debtors' counsel, and counsel at the United

States Trustees' Office. She provided these various case professionals with her "best case scenario" budget to fulfill this ombudsman appointment. Already, PCO's efforts and follow-up have gone well beyond what she estimated prior to appointment. Accordingly, PCO is quite concerned about becoming an additional financial burden to this and the other Debtor locations when resources need to be directed to addressing staffing needs, supplies, maintenance, and repairs essential for the safe delivery of care. To that end, PCO looks to the other case professionals who have a much better grasp of Debtors' finances to chart the best course of action that is considerate of the efforts and needs of the remaining dedicated staff that maximizes the delivery of resources to patients/residents.

## SITE VISIT DETAIL

The facility layout at the Seguin Debtor location matches that of the Ft. Worth and Carrollton (internally, Carrollton is called "**Prestonwood**") Debtor locations. However, the licensed bed capacity at the Seguin location was 115 beds as compared to 120 beds at the other two locations. The facility footprint is essentially a large square built around a central courtyard. The total licensed bed capacity is split evenly across two units (58 licensed beds on the "**Recovery**" unit and 57 licensed beds on the "**Kinser Care**" unit). While most of the rooms were semi-private occupancy, a total of five private rooms (two of them private suites) were noted.

At the time of PCO's site visit, a total of ten rooms (9 semi-private and one private) were out of service awaiting various repairs, most of them related to non-functional self-contained heating/cooling units (the unit is called a "**PTAC**" unit and is most understood to the layman as the type of heating/cooling unit seen in hotel rooms). Additionally, one room was utilized for storage, making the facility functional bed capacity 94 at the time of PCO's visit. The census at the time of PCO's visit was 69 with an admission anticipated.

At the time of PCO's site visit, the care staff consisted of three nurses, five nursing assistants ("**CNAs**"), and two hospitality aid[2] team members across the two units. While the staffing at the time of PCO's visit was below the Debtor staffing matrix, it was not dramatically so. However,

---

[2] Hospitality aids provide non-direct care support such as passing ice, making beds, passing meal trays to residents who can feed themselves. Typically, candidates are hired in this role to develop and take/pass the certification testing to move to the broader, direct care role of CNA.

staffing shortages/challenges were universally cited as the facility's largest concern without post-petition improvement/relief.  Staff reported overnight staffing as low as one nurse and one nurse assistant for each hall.  Individuals filling the nurse assistant role included leadership, up to and including the facility administrator.  Staffing of this nature occurred over the weekend immediately following PCO's site visit.

The location reported having limited remaining full-time team members.  Because the Debtors do not supplement core staff coverage with staffing agency contracts, staffing gaps require overtime, sometimes mandatory, and various leadership team members to work to cover direct care roles.  Regular challenges with incomplete staffing coverage were reported.

Remaining staff members not only attributed staff departures to continued staffing challenges, but also to other various factors, including without limitation pay benchmarks below that of other area facilities, supply, insurance, and payroll concerns beginning pre-petition and continuing through to the time of PCO's site visit.

The top reported employee payroll concern was receipt of "net pay" pay stubs without pay and deduction itemization.  PCO also received direct reports from staff at this and other locations concerning gaps in medical/dental/prescription insurance coverage resulting in staff self-payment for services that would otherwise have been covered by insurance – occurring both pre- and post-petition.

At the time of PCO's site visit the Assistant Director of Nursing ("**ADON**") had resigned.  The Director of Nursing ("**DON**") was not in the building because she had worked covering night shift staffing.  The MDS Nurse, the individual who is tasked with the assessment, coordination, and timely filing of resident documentation that roles up to federal government program payments, was assisting both in the ADON role and filling various vacant shift needs.  A new ADON candidate was identified and promoted from within, leaving the charge nurse role she occupied vacant.

Shortly after PCO's site visit, the facility Administrator shared that she had submitted her resignation, effective early January 2024, in large measure due to ongoing staffing challenges.  The Administrator is a licensed social worker and was able to fill this role on an interim basis to cover

employee leave. The Administrator's anticipated departure also could impact continued interim social worker coverage, if needed.

The plant operations manager ("**Plant Ops**") was also absent at the time of PCO's site visit. The Administrator denied concerns surrounding Plant Ops engagement and documentation associated with life safety code requirements and provided a copy of the November 1, 2023, survey report on this topic that found no deficiencies. With that said, PCO did note that the kitchen hood inspection/maintenance sticker was outdated, despite the hood itself appearing clean. The number of non-working PTAC units was also suggestive of some level of backlog in maintenance monies/needs. PCO also noted a piece of plywood on the roof to the right of the main entrance, with the Administrator reporting the existence of the repair need for an extended period. Delayed landscaping maintenance was also easily appreciated upon arrival.

PCO reached out to the Plant Ops professional to schedule additional, specific follow-up and exchanged emails with this individual as she identified some trends across facilities relative to additional outstanding maintenance repair needs.[3] The Plant Ops manager has been timely and transparent in his responses to these inquiries. PCO will remain engaged with this team member to understand what, if any, additional deferred maintenance and/or repairs exist for this location.

Plant Ops also manages the transportation driver, laundry, and housekeeping ("**EVS**"). Seguin has two full-time housekeepers and an EVS supervisor. Accordingly, PCO observed the driver assisting the modest EVS team with floor mopping between driving residents to and from appointments. PCO did request to see the paper products storage location. PCO confirmed a modest amount of toilet paper and paper towels. While the supply level was described as "tight," EVS indicated that supplies had improved post-bankruptcy. Nonetheless, continued outages were reported with medium trash bags noted to be out at the time of PCO's visit.

PCO toured the kitchen and met with the relatively new dietary manager. The facility is on a one-month menu rotation. PCO did note temperature log documentation associated with various

---

[3] Hot water heater repair needs were identified across facilities, particularly in the laundry areas. At report filing, this Debtor reported ordering the part needed to fix the issue.

food storage, cooking, and cleaning activities. Frozen, refrigerated, and dry stock food items were noted. PCO inquired about assurances that the facility had the full 72-hours of emergency food and water on hand since these supplies appeared limited. In advance of this report writing, the dietary manager reported efforts to continue replenishing these items. Like the clinical care staff, the dietary manager reported challenges with staff hiring and retention.

At the time of PCO's site visit, Seguin was between dieticians. This service is contracted, at this and other locations, with leadership reporting a new contract with a replacement vendor.

The other notable contracted service that was vacant at the time of PCO's site visit was that of specialty transportation. While Seguin has its own van and driver, it cannot provide stretcher transport or other specialized transport services. The previous transport company ceased providing services pre-petition and a replacement contract was not yet secured. On the date of the PCO's site visit, staff were working to secure stretcher transport for a particular resident's need.

In addition to the services discussed thus far, PCO met other team members at the morning meeting and throughout the site visit day. Specifically, PCO interacted with the Activities Director who reported some post-petition relief in the flow of supplies associated with her role. The Business Development team member reported a lengthy tenure with the Debtors. While she reported increased competition over the years of her employment, she also reported continued success at admissions post-petition with thirteen admissions in the month following the petition filing.

Limited yet sufficient therapy staff were noted on-site at the time of PCO's site visit, with the Administrator reporting the full complement of services available (speech, occupational, and physical therapy services) as needed. These services appear to be contracted through an affiliated, non-Debtor entity.

Since the initial site visit, PCO has remained engaged with leadership and team members at this location. PCO provided her cell number to Seguin staff who have contacted PCO with continued staffing and pay stub concerns. PCO will coordinate a second site visit with nursing leadership given that the current administrator will have departed at that time.

DATED: December 26, 2023.    By: /s/ *Susan N. Goodman*; TX Bar 24117585
PIVOT HEALTH LAW, LLC
P.O. Box 69734
Oro Valley, AZ 85737
Ph: 520.744.7061 (message)
sgoodman@pivothealthaz.com
*Patient Care Ombudsman – admitted pro hac vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served through the court's electronic notification system as permitted by Appendix 5005 of the Local Rules of the U.S. Bankruptcy Court for the Eastern District of Texas on the 26th of December 2023, with a copy for posting at the Debtor location. Further, a copy of the pleading filed at Docket No. 72 was mailed, USPS Regular Mail, to the following, top 30 creditors (combined).

New Benefits Ltd.
PO Box 803475
Dallas TX 75380

New Source Medical
9913 Shelbyville Rd
Louisville KY 40223

North Texas Fire Systems, LLC
PO Box 880
Sanger TX 76266

Optima Healthcare Solutions, LLC.
PO Box 72046
Cleveland OH 44192

Performance Foodservice
524 West 61st street
Shreveport LA 71106

Pharmacy Unlimited
PO Box 592602
San Antonio TX 78259

PointClick Care Technologies INC
PO BOX 674802
DETROIT MI 48267

Progressive Commercial
PO Box 650201
Dallas TX 75265

Simply Work
PO Box 2172
Neenah WI 54957

Southern Cross Ambulance
PO Box 311295
New Braunfels TX 78131

The PICC Team DFW
4500 Northside Dr.
Amarillo TX 79108

Trans-Care Medical Transport
PO Box 14274
Fort Worth TX 76117

WellSky Corporation
11300 Switzer Road
Overland Park KS 66210

| | | |
|---|---|---|
| Ability Network Inc<br>PO Box 856015<br>Minneapolis MN 55485 | Abshire Dietary Consultants<br>P.O. Box 1635<br>El Campo TX 77437 | AT&T MOBILITY (Account 877003191)<br>PO Box 6463<br>Carol Stream IL 60197-6463 |
| Auto-Chlor<br>P.O. Box 669126<br>Dallas TX 75266 | Biomedical Waste Solutions<br>PO Box 1147<br>Port Neches TX 77651 | Blue Cross Blue Shield of Texas<br>P.O. Box 731428<br>Dallas TX 75373-1428 |
| Care One Communications LLC<br>PO Box 153122<br>Dallas TX 75315 | Carrington Coleman<br>901 Main Street<br>Dallas TX 75202 | Center Point Energy<br>PO Box 4981<br>Houston TX 77210 |
| City of Dallas<br>City Hall, 2D South<br>Dallas TX 75277 | City of Fort Worth<br>818 Missouri Ave<br>Fort Worth TX 76104 | City of Seguin<br>PO Box 591<br>Seguin TX 78156 |
| Colleyville Lofts Ventures LLC - Attn Acctg<br>1700 Pacific Ave, Ste 1650<br>Dallas TX 75201 | Crown Shields Transport LLC<br>11617 Lake Front Dr<br>Frisco TX 75036 | Dallas Life Support Systems Inc.<br>7440 Whitehall St.<br>Richland Hills TX 76118 |
| Dearborn National<br>36788 Eagle Way<br>Chicago IL 60678 | Diagnostex Consultants<br>8913 Mid Cities Blvd<br>North Richland Hills TX 76182 | Direct Energy Business<br>P.O. Box 660749<br>Dallas TX 75266 |
| Direct Supply, Inc.<br>Box 88201<br>Milwaukee WI 53288-0201 | Exponent Technologies Inc<br>4970 Landmark Pl<br>Dallas TX 75254 | Griffin Properties of Fort Smith<br>PO Box 2207<br>Fort Smith TX 72902 |
| Guadalupe Regional Medical Ctr<br>1215 E Court St<br>Seguin TX 78155 | IPFS Corporation<br>P.O. Box 100391<br>Passadena CA 91189-0391 | JJJNEMT LLC<br>1741 Cross Creek Lane<br>Cleburne TX 76033 |
| Kaliber Data Security & Compliance<br>50 Franklin Street<br>Boston MA 2110 | Mas Vida Health Care Solutions<br>133 Nursery Ln<br>Fort Worth TX 76114 | Medina Valley Security, Inc.<br>PO Box 1030<br>Lytle TX 78052 |
| Medline Industries, Inc.<br>Dept 1080<br>Dallas TX 75312 | Neighborhood Portable Xray and Lab<br>6901 Avenue K #109<br>Plano TX 75074 | Netsmart Technologies, Inc.<br>PO Box 713519<br>Philadelphia PA 19171 |

By: /s/ *Susan N. Goodman*; TX Bar 24117585