Buffey E. Klein
State Bar No. 24032515
Buffey.Klein@huschblackwell.com
HUSCH BLACKWELL LLP
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
(214) 999-6152; fax (214) 999-6170

Lynn Hamilton Butler
Lynn.butler@huschblackwell.com
HUSCH BLACKWELL LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456; fax (512) 479-1101

*Attorneys for Alleon Capital Partners LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § § | |
| REMARKABLE HEALTHCARE OF CARROLLTON LP, | § § § | Jointly Administered Under Case: |
| | § | Case No. 23-42098 |
| REMARKABLE HEALTHCARE OF DALLAS, LP, | § § § | Chapter 11 |
| | § | Subchapter V |
| REMARKABLE HEALTHCARE OF FORT WORTH, LP, | § § § | |
| REMARKABLE HEALTHCARE OF SEGUIN, LP, | § § § § | |
| REMARKABLE HEALTHCARE, LLC, | § § § § | |
| DEBTORS. | § § § | |

**ALLEON CAPITAL PARTNERS LLC'S OBJECTION AND RESPONSE TO DEBTORS' MOTION TO VACATE AND/OR REVOKE ORDER DISMISSING BANKRUPTCY <u>CASES AND MOTION FOR SANCTIONS</u>**
**[RE: Docket Nos. 109 and 110]**

TO THE HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE:

1

Alleon Capital Partners LLC ("<u>Alleon Capital</u>"), by and through counsel, hereby files this objection and response (the "<u>Objection</u>") to Debtors' *Motion to Vacate and/or Revoke Order Dismissing Bankruptcy Cases and Motion for Sanctions* [Docket Nos. 109 and 110] (the "<u>Motions</u>") and in support thereof would show the Court as follows.

## I.     INTRODUCTION

1.     Alleon strenuously objects to the relief requested in Debtor's Motion to Vacate and/or Revoke Order Dismissing Bankruptcy Cases. The Motion has no bearing in law or fact and is premised on Debtor's new counsel's belief that an agreement was reached between the Debtors and Alleon as to post-dismissal financing. No such agreement was discussed prior to the entry of the Order. No such agreement was requested by the Debtors at any time prior to the entry of the Order and no proof of any such post-dismissal agreement exists. The asserted agreement is mere fantasy. The only agreement as to financing existed in the Court's cash collateral and financing order, which rights and obligations were specifically referenced and removed in the Dismissal Order.

2.     The Debtors asked for a dismissal of their cases without consultation with Alleon. In fact, Alleon and the Debtors' landlord objected to the dismissal. The Dismissal Order that resulted from those objections prevents the Debtors from refiling bankruptcy with prejudice. That Order is not a final and non-appealable order and the Debtors raise no prove-able, identifiable reason that Rule 60 applies. Further, and as detailed below, the Debtors' actions post-dismissal hearing fully support Alleon's decision to act to protect its collateral.

## II.     PERTINENT FACTUAL BACKGROUND

3.     On November 2, 2023, the Debtors filed Chapter 11 bankruptcy after Alleon refused to fund the Debtors after discovering that the Debtors improperly and deceptively hid

receipt of a $394,955.40 IRS Employee Retention Credit refund, a refund previously offered as collateral in exchange for an over-extended position in the Debtors' financing facility.

4. Throughout the case, the Debtors operated under continuing cash collateral orders containing agreed-upon terms and conditions with Alleon. The final hearing on cash collateral was scheduled for February 6, 2024.

5. On January 12, 2024, the Debtors filed their motion to dismiss their cases. Both Alleon and the Debtor's landlord objected to the dismissal. Those objections asked that the cases be dismissed with prejudice and that the prepetition deposit account control agreements be put back in place upon dismissal. The Sub. V trustee also objected.

6. On January 23, 2024, the Court held its hearing on the dismissal motion and gave a bench ruling granting the motion with the inclusion of the dismissal with prejudice and the re-establishment of Alleon's deposit control agreement.

7. A proposed dismissal order was uploaded on January 30, 2024 and was signed on February 9, 2024.

8. On February 12, 2024, Debtors requested that Alleon continue to accept the weekly $10,000 payments outlined in the cash collateral orders:

> *I appreciate that feedback. I want to be transparent with whatever we do to continue positive movement as we go forward until we secure take out lending.*
> *As you may remember, we put a plan together that Josh [landlord representative] assisted us with on how we could maneuver through 2024 successfully. We are all having to make some changes in order for us to be able to get healthy again. Josh*

3

*agreed to reduce rents to $80k per month paid weekly.*

*Please continue to accept the $10k weekly as we try to get a handle on cash. We are not meeting minimum cash needs yet and need some runway. That was the agreement we had that made us comfortable to dismiss the Chapter 11 cases.*

*Thank you for your consideration.*

*Jon*

9. On that day, Alleon's counsel notified Debtor's counsel:

*Mark*

*Seeing this email below. I want to clarify two points. First, dismissal of the Chapter 11 cases was at your clients' behest—not something my client requested or suggested. Secondly, there was no agreement that the interest payments would continue in the same manner as had been stipulated to in the cash collateral order. If your client has a proposal and request for my client to consider, please convey that proposal.*

10. Alleon never received a proposal after that communication.

11. On February 12, 2024, the landlord confirmed to Alleon that there was no agreement to reduce rent to $80,000 a month.

12. On February 12, 2024, Alleon's counsel requested confirmation that the Debtors had delivered the Dismissal Order to Regions Bank and requested re-establishment of the deposit account control agreement.

13. On February 13, 2024, the agreed-upon billing company (Compass) notifies Alleon that the McPike's are restricting Compass' access to current claims, thereby destroying the intent of the parties by installing a competent third party biller.

14. On February 14, 2024, Alleon's counsel followed up with its request for verification that the account agreement had been effectuated.

15. On February 15, 2024, Debtor's counsel informed Alleon's counsel that he no longer represented the Debtors.  No representation about the account agreements was offered.

16. On February 15, 2024, Alleon's counsel reached out to Regions Bank's counsel requesting confirmation that the account agreements had been re-instated.

17. On that date, Regions Bank's counsel notified Alleon's counsel that the Debtors' owner – John McPike – was telling the bank that an agreement was reached that would impact the account agreement.

18. On February 16, 2024, Regions Bank's counsel alerted Alleon's counsel that "Mr. McPike is asking Regions to stop reinstalling the DACA controls because he is working out "items" with Alleon".  No such agreement ever existed.

19. At the same time, Alleon received an email from Mr. McPike stating, "We have been working with Regions to get the DACA' s reinstated".

20. During this time period, Alleon is notified that the Debtors are negotiating a new management agreement with West Wharton County Hospital District ("the District") in which the District would sublease all of the Debtor's physical facilities and obtain ownership of the Debtor's business.  The District would then hire the Debtors as managers of those facilities as part of a "QIPP".  These negotiations, which began in January, were ongoing prior to the dismissal.

5

21. As part of the QIPP, all future "Total Net Revenue" would become the sole and exclusive property of the District, thereby stripping the Debtors of any account receivable accrual in the future.

22. On February 14, 2024, counsel for the District notified Alleon's counsel that the Debtors filed Change of Ownership notifications to Medicare and Medicaid. Those notifications set the effective date of the CHOW for March 1, 2024. The Debtor never informed Alleon on these actions prior to the District's disclosure.

23. On February 19, 2024, Alleon agrees to make an advance to the Debtors notwithstanding the above events.

24. On February 21, 2024, in reaction to multiple instances of the billing company bringing errors and irregularities to Alleon's attention, and the McPike's attempt to restrict the billing company's duties, Alleon notifies the Debtors that it will no longer fund until billing issues are resolved.

> *Jon,*
>
> *I assume the sweeps will begin to come in tomorrow as Regions indicated that all should be set up. Please note, however, that we will not be releasing any funds until we have full confirmation from LaDonna and Compass that Compass will be responsible for working all claims, has access to all systems, and will be the main biller, as agreed to. I suggest you and Compass resolve this asap.*
>
> *Thanks.*

25. On February 22, 2024, Regions Bank notifies parties that the account control agreements will be cancelled.

6

26. On February 27, 2024, the Debtors notify Alleon that collections are greatly reduced because the Change of Ownership notification has caused a vendor hold on Medicaid funds to the Debtors. As part of the vendor hold, Medicaid withholds all payments (payments which make up Alleon's collateral) while the Change of Ownership process is ongoing.

27. Notwithstanding these continuing events, Alleon continues to advance funds to the Debtors through February 29, 2024.

28. On February 29, 2024, Alleon files for the appointment of a state court receivership over the Debtors in Tarrant County District Court.

29. The state court set a hearing for March 6, 2024 on the receivership application. That hearing date was continued at the insistence of Debtors' new litigation counsel.

30. From February 26, 2024 through February 29, Alleon advanced $403,651.87 to the Debtors.

31. Subsequent to Alleon's last advance on February 29, Alleon discovered that the Debtors received $981,381.00 from the District as part of the Debtors' newly executed QIPP with the District.

32. Subsequent to Alleon's last advance, Alleon uncovered evidence that other deposits were made by the Debtors into their operating accounts that were not reported to Alleon. Given that all payor deposits are required to be paid into the Regions Bank accounts, Alleon believes these are payor payments intercepted by the McPikes and misapplied.

33. Alleon has not made any advances since February 29, 2024, the day before the Debtors transfer ownership of their businesses to the District.

### III.    OBJECTION AND RESPONSE

34. Rule 60(b) of the Federal Rules of Civil Procedure is made applicable to

bankruptcy proceedings through Federal Rule of Bankruptcy Procedure 9024. Fed. R. Bankr.P. 9024. Courts do "not lightly disturb the finality of its summary judgment Order." *Webb v. City of Huntsville*, 2020 WL 11564115, at *3 (S.D. Tex. Aug. 10, 2020). Relief under Rule 60(b) is extraordinary in nature and that motions invoking that rule should be granted sparingly." *Karak v. Bursaw Oil Corp.,* 288 F.3d 15, 19 (1st Cir.2002). The burden of proof on a Rule 60(b) motion is on the movant and is "properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 391 (2d Cir.2001); *see also Runnels v. Sheriff, Gregg Cnty.*, 2020 WL 6395449, at *1 (E.D. Tex. Nov. 2, 2020). And "it goes without saying that a Rule 60 motion is not a substitute for an appeal from the underlying judgment." *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1408 (5th Cir. 1994). When determining Rule 60(b) motions, courts "balance fairness considerations present in a particular case against the policy favoring the finality of judgments." *Williams v. N.Y.C. Dep't of Corrections,* 219 F.R.D. 78, 84 (S.D.N.Y.2003) (internal citations omitted).

35. A movant must succeed on one of the six subsection of Rule 60(b) in order to overturn or vacate a final judgment. *See* Fed. R. Procedure 60(b)(1)-(6).

**A. RHC is not Entitled to Relief Pursuant to Rule 60(b)(1) as no Allegation or Action of "Mistake, Inadvertence, Surprise, or Excusable Neglect" appears or is alleged in this Court's Granting of RHC's Own Dismissal Motion.**

36. Even if the Court were to construe RHC's factual misrepresentations as true, Rule 60(b)(1) is not relevant to the facts at hand. Rule 60(b)(1) only can provide for relief from final judgments that are the product of mistake, inadvertence, surprise or excusable neglect. *Wesco Prod. Co. v. Alloy Auto. Co.,* 880 F.2d 981, 984–85 (7th Cir. 1989). "[G]ross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for 60(b)(1) relief." *Trevino v. City of Fort Worth*, 944 F.3d 567, 571 (5th Cir. 2019) (internal citations omitted). Not

surprisingly, motions under Rule 60(b)(1) are disfavored, and "the burden on the moving party is substantial." *In re DeMartino*, 484 B.R. 550, 558–59 (Bankr. E.D.N.Y. 2012), *aff'd,* No. 09-40443 JF, 2014 WL 1572580 (E.D.N.Y. Apr. 17, 2014)

37. In this case, the only apparent argument RHC makes related to the Final Dismissal Order is that it relied on Alleon's alleged agreement to negotiate a post-dismissal Rule 11 agreement. RHC neglects to mention that it filed the Motion to Dismiss, which was opposed by Alleon. RHC's motion was granted. Such an explanation that RHC would "only" have dismissed the case but for RHC's alleged promises to negotiate are patently false based on the record alone. However, pertinent to the legal requirements of this Motion, RHC's allegations do not even begin to satisfy the very stringent requirements of Rule 60(b)(1) – and fail to call into question the alleged "mistake, inadvertence, surprise, or excusable neglect" that occurred in relation to this Court's issuance of the Final Dismissal Order.

38. RCH's alleged choice to rely on the negotiation of a post-dismissal agreement, does not meet the "stringent" excusable neglect standard, which "will not be met when neglect is the result of a losing litigation strategy." *Webb v. City of Huntsville*, 2020 WL 11564115, at *3 (S.D. Tex. Aug. 10, 2020) (citing *generally Ackermann v. United States,* 340 U.S. 193, 198, 71 S. Ct. 209, 95 L. Ed. 207 (1950) (stating that "[t]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from"); ; *Slaughter v. S. Talc Co.,* 919 F.2d 304, 307 (5th Cir.1990) (stating that "tactical decision" to withhold affidavits on motion for summary judgment could not be deemed excusable neglect). RCH chose this litigation path and did so against objection. It should not now be allowed to run back to this Court now that the easily predictable results of its decisions have materialized.

9

**B. RHC is not Entitled to Relief Pursuant to Rule 60(b)(3) as no Allegation or Action of "Fraud or Misrepresentation" Occurred in this Court's Granting of RHC's Dismissal Motion.**

39. Similarly, even if the Court were to construe RHC's factual misrepresentations as true, RHC's arguments to remove the Final Dismissal Order under Rule 60(b)(3) also fail woefully. Rule 60(b)(3) requires that "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct" was committed by an opposing party.

40. While judgments entered as a result of settlement may be reopened or vacated when fraud occurs – no fraud has even been alleged in this case. *See In re Harbor Fin. Group, Inc.*, 303 B.R. 124, 133–34 (Bankr. N.D. Tex. 2003). RHC only (and without evidence) alleges that Alleon misrepresented its intentions to enter a post-dismissal agreement with the RHC upon the RHC voluntary dismissal of these Bankruptcy Cases. As a threshold issue, RHC sought dismissal of the Bankruptcy case – which Alleon objected to. Second, RHC does not allege, nor does the evidence indicate that Alleon agreed to enter into a post-dismissal agreement. RHC relies on third-party emails that reference vague promises by Alleon regarding post-dismissal conduct. RHC cannot even scrounge up an email from Alleon that alludes to the same. More importantly, nothing presented points to a contingent agreed case dismissal based on entry of the alleged promised agreement. Nor would this make sense based on the fact that RHC field the dismissal motion itself. As clear to this Court from the Final Dismissal Order hearing and pleadings related to the same, the requirement that the parties enter into the agreement was **never** a pre-requisite to the Final Dismissal Order. Rather, the parties attempted and failed to reach a post-dismissal agreement on a limited issue. This was not an inconceivable result given the parties' history and RHC's repeated defaults. RHC's post-dismissal strategy failed and RHC is now seeking to untimely re-trade on the Final Dismissal Order, wasting the resources of this

Court and the parties. Rule 60(b)(3) was not written, nor can be used to overturn legal and strategic decisions that a party later regrets. As in the facts of this case, "[t]here can be no 'misconduct' under the definition of the term in Rule 60(b)(3) when a party had no legal, ethical, or moral 'obligation' or 'duty' to conduct itself in a certain manner or take a certain course of action. *In re Jack Kline Co., Inc.*, 440 B.R. 712, 732 (Bankr. S.D. Tex. 2010) (citing Black's Law Dictionary 580, 1089, 1179 (9th ed. 2009)). Alleon had no obligation to enter into a post-dismissal agreement – and a Rule 60(b)(3) motion cannot be based on the same.

41.     This Court has cited the Fifth Circuit in noting that a party is only entitled to use Rule 60(b)(3) to overturn a judgment if the movant party can establish: "(1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case. The moving party has the burden of proving the misconduct by clear and convincing evidence." *In re Whelan*, 582 B.R. 157, 172 (Bankr. E.D. Tex. 2018) (quoting *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005) (citations omitted). RHC has "totally failed to show that any such misconduct prevented [it] from fully and fairly presenting his case." *Id. (citing PC Drivers Headquarters, L.P. v. AmbiCom Holdings, Inc.*, 2017 WL 1052608, at *2 (W.D. Tex. Mar. 20, 2017)). The only alleged misconduct is that Alleon represented that it would enter into a post-dismissal agreement. This vague allegation with no obligation present in the Final Dismissal Order – which all facts surrounding RHC concedes it was fully aware of upon agreement of the language of the Final Dismissal Order – falls woefully a meeting even an allegation that the alleged "misconduct prevented the moving party from fully and fairly presenting his case" to this Court. *Whelan,* 582 B.R. at 172. This Court has noted that "[w]hen a party is capable of fully and fairly presenting his case notwithstanding any fraud or misconduct, a trial court may properly deny a Rule 60(b)(3)

motion." *Gulf Petro Trading Co. v. Nigerian Nat. Petroleum Corp.*, No. 1:05CV619, 2006 WL 1004983, at *1 (E.D. Tex. Apr. 17, 2006) (citing *Diaz v. Methodist Hosp.,* 46 F.3d 492, 497 (5th Cir.1995)).

42. Moreover, the *In re Barr* case cited by RHC could not be less relevant to the facts at hand. Here, (1) there was not agreement between the parties that depending on the future actions of Alleon, (2), the Motion to Dismiss was sought by RHC – and granted by this Court. *In re Barr,* 183 B.R. 531, 539 (Bankr. N.D. Ill. 1995). The only re-trading is by RHC and evident in the absurdity of this Motion. Alleon has neither failed to meet any obligation nor is in violation of any agreement between the parties. As detailed above, RHC was and is in default under the Loan Agreement – and has continued to violate the Loan Agreement post-dismissal with new and additional defaults, including but not limited to acquiring a priming lender.

**C. RHC is not Entitled to Relief Pursuant to Rule 60(b)(5) as the Final Dismissal Order is Not A Prospective Order Resulting from RHC's Own Motion.**

43. A request for relief under Rule 60(b)(5) "is considered extraordinary." *In re South*, 647 B.R. 535, 537 (Bankr. E.D. Tex. 2023) (quoting *In re Coffman*, 271 B.R. 492, 498 (Bankr. N.D. Tex. 2002)). Indeed, Rule 60(b)(5) is "very rarely" used. *In re ATP Oil & Gas Corp.*, 544 B.R. 607, 614 (Bankr. S.D. Tex. 2016) (*quoting* 11 Fed. Prac. & Proc. Civ. § 2863 (3d ed.)). Rule 60(b)(5) only permits the court to relieve a party from a judgment where "the judgment has been satisfied, released, or discharged, ... or it is no longer equitable that the judgment should have prospective application." Moreover, the "requirements for relief under that provision of Rule 60(b)(5) are that (1) the judgment has prospective application and (2) it is no longer equitable that it should so operate." *Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F.Supp.2d 614, 650 (S.D. Tex. 2009) (citing *Kirksey v. City of Jackson*, 714 F.2d 42, 43 (5th Cir.1983). This Court has noted that this "rule has limitations." *In re Whelan*, 582 B.R. at 172-

12

173. "It does not allow relitigation of issues that have been resolved by the judgment. Instead it refers to some change in conditions that makes continued enforcement inequitable." *Id. (citing* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRACTICE & PROCEDURE—CIVIL § 2863 at pp. 459–60 (3d ed. 2012)).

44. As noted, 60(b)(5) only applies "only to final judgments with prospective application." *Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 851 (5th Cir. 1990). Courts have long held that for an order to have "prospective application," it must be "executory or involve[ ] the **supervision of changing conduct or conditions**." *Grynberg v. BP P.L.C.*, 318 F.R.D. 533, 539–40 (D.D.C. 2016) (interal quotations omitted) (emphasis added). "[I]t is difficult to see how an unconditional dismissal could ever have prospective application within the meaning of Rule 60(b)(5)." *Id.* As such, Courts have generally held that dismissals with prejudice are not prospective within the meaning of Rule 60(b)(5). *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 272 (3d Cir. 2002); *see, e.g., Maraziti v. Thorpe,* 52 F.3d 252, 254 (9th Cir.1995); *Schwartz v. United States,* 976 F.2d 213, 218 (4th Cir.1992); *Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 851 (5th Cir.1990).

45. The dismissal of the case is simply a dismissal – and there's no "prospective application" as 60(b)(5) has been interpreted. Moreover, Rule 60(b)(5) or RHC trots out the same factual argument for the basis of its relief – that it assumed it could enter into an agreement with Alleon post-dismissal. Of course, as noted above, Alleon agreed to no obligation, and the Final Dismissal Order contains no obligation, to enter into a post-dismissal order. Courts do not reward parties' improper assumption or failed legal strategy under Rule 60(b)(5). *See In re Bella Fiore LLC*, 2016 WL 4480717, at *11 (Bankr. D. N.J. Aug. 23, 2016) (denying relief under 60(b)(5) where the entry of a Consent Order was made in reliance of a flawed assumption by a

13

creditor).

### D. RHC is not Entitled to Relief Pursuant to Rule 60(b)(6) as "Extraordinary Circumstances" do Not Exist in the Court's Granting of RHC's Own Dismissal Motion.

46. Finally, RHC's claim for relief under Rule 60(b)(6) is also unavailing. Rule 60(b)(6) is not available as a ground for relief "if the reasons offered for relief from [the order] can be considered in one of the more specific clauses of Rule 60(b)...." *Int'l Bhd. of Teamsters,* 247 F.3d at 391–92; *In re Salander,* 450 B.R. 37, 56 (Bankr. S.D.N.Y. 2011) ("Reasons for relief that fall under other subsections of Rule 60(b) do not qualify as justification for relief under Rule 60(b)(6)."); *In re Calpine Corp.,* 363 B.R. 709, 711 (Bankr. S.D.N.Y. 2007) (finding party could not properly move for relief under Rule 60(b)(6) where grounds for his motion were provided for under Rule 60(b)(1)). RHC has not stated any facts for relief under Ruel 60(b)(6) that it has not repeatedly asserted under Rule 60(b)(1), (b)(3), and (b)(5).

47. Here, RHC simply relies on Rule 60(b)(6) as an alternative ground for relief. However, courts have been clear that Rule 60(b)(6) simply cannot be used in such a manner. *See Transit Cas. Co. v. Security Trust Co.* 441 F.2d 788 (5th Cir.1971) *cert. denied,* 404 U.S. 883, 92 S .Ct. 211, 30 L.Ed.2d 164 (1971). The Fifth Circuit has held that 60(b)(1) and 60(b)(6) are mutually exclusive. *Id.* Therefore, "a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)." *In re Tyler*, 285 B.R. 635, 644 (Bankr. W.D. Tex. 2002), *on reconsideration* (Nov. 19, 2002); *In re Tucker*, 2021 WL 4901692, at *3 (Bankr. S.D. Tex. Oct. 20, 2021) ("[t]he reason for relief set forth under subsection (b)(6) cannot be the reason for relief sought under another subsection of 60(b)").

48. Furthermore, "[t]o justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Pioneer Inv.*

14

*Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 393 (1993). Courts generally find extraordinary circumstances warranting relief under Rule 60(b)(6) only where the movant was not at fault in his predicament, and was unable to take steps to prevent the judgment from which relief is sought. *See* 12 James Wm. Moore, *Moore's Federal Practice* § 60.48[3][c] (3d ed.2005) ("fault by movant usually means [a] lack of extraordinary circumstances"). "Rule 60(b)(6) does not reward a party that seeks to avoid the consequences of its own free, calculated, deliberate choices." *Aldana v. Del Monte Fresh Produce, N.A.*, 741 F.3d 1349, 1357 (11th Cir. 2014) (internal quotation marks omitted). A party cannot use Rule 60(b)(6) to "rescue" himself "from strategic choices that later turn[ ] out to be improvident." *Infiniti Info. Sols., LLC v. United States*, 93 Fed. Cl. 699, 705–06 (2010) (*quoting Good Luck Nursing Home, Inc. v. Harris,* 636 F.2d 572, 577 (D.C. Cir. 1980).

49. As discussed *infra*, there was **never** a binding obligation for Alleon to enter into a post-dismissal agreement, much less on the terms that RHC asserts were appropriate. RHC assumed it could reach a post-dismissal agreement with Alleon, but when that did not come to fruition, RHC's recourse is not the "extraordinary" relief that Rule 60(b)(6) provides. To the extent, RHC believes it has remedies, it should rely on the same under state law and in the appropriate forum.

E. **Public Policy Bars RHC From Relief Under Rule 60(b)**

50. RHC fails to cite and Alleon cannot locate a single case in the country pursuant to which relief was granted under Rule 60(b) from an order from which the movant themselves moved. The factual background shows that (i) without the knowledge or agreement of Alleon, RHC filed its Motion for Dismissal. Alleon objected to the Motion for Dismissal. The Final Dismissal Order was entered only after conversation with the Court and agreement regarding the

15

dismissal as being with prejudice. RHC apparently regrets its own Motion for Dismissal – but this is not grounds for relief under Rule 60(b). Alleon did not request, and in fact, opposed the relief. This Motion rests on unfounded allegations that Alleon somehow "misrepresented" or entered into some kind of alleged settlement term sheet – but for which RHC would not have dismissed the bankruptcy case. Nothing could be further from the truth. RHC was granted relief from its own Motion for Dismiss. The allegations and basis for this Motion are truly unfathomable.

51. Moreover, practically, it is unclear what relief would be. RHC has operated outside of bankruptcy – and an estate has not existed for over a month pursuant to the Final Dismissal Order. That bell was rung. In the interim, RHC has made payments; Alleon has extended additional funds; RHC has acquired a separate loan from a hospital district. There's no telling what other action RHC has taken outside of its reporting obligations to this Court and the United States Trustee? Is RHC seeking some kind of *nunc pro tunc* relief? Certainly, no request has been made in the Motion or legal showing has been presented. This is a factually and legally ill-conceived motion that flies in the face of the finality of judgments. This is a waste of valuable judicial and client resources.

52. Alleon submits that the Debtors chose to be out of the bankruptcy court's forum. As a result, Debtors are solely to blame for their current situation. If the Debtors believe they have actionable complaints against Alleon, the Debtors can easily raise such complaints in the Tarrant County state district court proceeding.

WHEREFORE, for the reasons set forth in the Objection, Alleon Capital hereby requests that this Court enter an order denying Debtors' *Motion to Vacate and/or Revoke Order Dismissing Bankruptcy Cases and Motion for Sanctions* [Docket Nos. 109 and 110], and granting Alleon

16

Capital such other and further relief to which it is entitled at law or in equity.

Date:   March 18, 2024                                    HUSCH BLACKWELL, LLP

By:   */s/ Buffey E. Klein*
Buffey E. Klein
State Bar No. 24032515
Buffey.Klein@huschblackwell.com
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
(214) 999-6152; fax (214) 999-6170

Lynn Hamilton Butler
State Bar No. 03527350
Lynn.butler@huschblackwell.com
HUSCH BLACKWELL LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456; fax (512) 479-1101

*Attorneys for Alleon Capital Partners LLC*

## CERTIFICATE OF SERVICE

I do hereby certify that the foregoing objection was filed electronically through the Court's CM/ECF system and served electronically on all parties enlisted to receive service electronically.

/s/   *Buffey E. Klein*
Buffey E. Klein