# EXHIBIT 1



**9065 Harmony Drive**
**Midwest City, OK 73130**
**Phone: 405-451-0550**
**Fax: 866-451-0350**

## BILLING SERVICE AGREEMENT

This Agreement is made by and between <u>Remarkable Healthcare of Dallas, LP</u> (hereinafter referred to as "**FACILITY"**), with its office and principal place of business at <u>3350 Bonnie View Road, Dallas, TX  75216</u> (the "**FACILITY ADDRESS**") and Compass Medicare Billing LLC (hereinafter referred to as "**PROVIDER"),** with its office and principal place of business at <u>9065 Harmony Drive, Midwest City, OK 73130</u>. The effective date of the said service agreement shall commence on the "**AGREEMENT EFFECTIVE DATE**" as agreed upon by both parties.

## SECTION 1 - TERM

**1.**     The term of this agreement shall be twenty-four (24) months commencing with the date of this agreement. This agreement shall automatically renew for an additional twelve (12) month period, unless terminated by either party pursuant to the terms herein. This Agreement may be terminated by **FACILITY** or **PROVIDER** for any reason upon thirty (30) days written notice.  The indicated rates and charges will be effective until termination date after which date the basis for computing charges will be in accordance with the Agreement.

## SECTION 2 - SERVICES

**2.**     Pursuant to the terms and conditions of this agreement, **PROVIDER** offers the following services:

**2.1.**      Provide Medicare monthly and discharge billing;

**2.2.**      Provide Medicaid weekly and discharge billing;

**2.3.**      Cross-bill to Medicaid and Third Party Insurance Companies as necessary, for claims that do not automatically crossover;

**2.4.**      Verify patient Medicare eligibility via Common Working File (CWF);

**2.5.**      Consult as to Policy & Procedures as they relate to Medicare;

**2.6.**      Assist with Medicare/Managed Care denials;

**2.7.**      File all primary and secondary private insurance claims;

**2.8.**      Batch bill flu shots and Covid shots on a yearly basis; and

Compass Initials   _gg_

Facility Initials  _____



**2.9.**        Confirm patient statements to are accurate in system and ready Facility for collection;

## SECTION 3 - BILLING SERVICES

**3.**        **PROVIDER** shall provide **FACILITY** with a set of procedures for the collection, recordation and preservation of all data, forms, and documents essential to the effective documentation of reimbursable Medicare activities and services. **FACILITY** agrees to maintain and keep current all such forms and documents according to the stated procedures. Failure to do so may result in inaccurate and/or incomplete Medicare reimbursement and/or penalties for which **PROVIDER** shall not be responsible.

**3.1.**        **PROVIDER** shall use reasonable efforts to affect collections of claims and to address denials. **PROVIDER'S** Services related to denials shall be limited to that of assisting **FACILITY** with communication to Payer and production of records Payer during the appeal process once **FACILITY** has initiated such appeal. All duties of **PROVIDER** relating to the appeal process shall cease upon the Payer's decision to pay such claim or issuing a statement stating the appeals process has been exhausted. All expense shall be the responsibility of **FACILITY**.

**3.2.**        **FACILITY** agrees to keep current all correspondence regarding the billing of intermediaries and third-party providers as to not inhibit the billing process or collection of funds.

**3.3.**        **PROVIDER,** shall, on a monthly basis, furnish **FACILITY** the Medicare Remittance Advice depicting the amount of each payment received from Medicare the date thereof.

**3.4.**        **FACILITY** shall provide access to copies of all Explanation of Medical Benefits and Remittance Advices to **PROVIDER** within five working days of receipt.

**3.5.**        Upon termination of this agreement, **PROVIDER** will complete the processing of all primary claims delivered to **PROVIDER** prior to the termination date.

**3.6.**        **FACILITY** authorizes and agrees to cooperate with **PROVIDER'S** efforts to contact patients in order to confirm or augment the claim information provided under this agreement. Any attempts by **PROVIDER** to collect self-pay balances will require prior authorization and additional fees may apply from the facility.

**3.7.**        Each party shall maintain true and correct records of the accounts subject to this agreement.

Compass Initials _GG_
Facility Initials _____



**3.8.** Each party, upon request, shall have the right to audit the accounts to verify the accounting of all funds and accuracy and appropriateness of all charges. For applicable accounts agreed upon, FACILITY and PROVIDER.

## SECTION 4 - FEES

**4.** **FACILITY** agrees to pay a fee $375 one-time set-up fee. In the event **PROVIDER** is required to modify or change the clearinghouse "host", **FACILITY** agrees to pay an additional $1,125. Further, **FACILITY** agrees to pay **PROVIDER** for the services provided in section 2.0 as listed below:

**4.1.** In consideration for the Billing Services provided in Section 3, the **FACILITY** agrees to pay the **PROVIDER** a fee equal to 8% for Medicare and 10% for Managed Care/Private Insurance of the total Collections of receivables .that are collected by PROVIDER.. For purposes of this Section 4.1 only, the term "Collections" refers to the actual funds received by the **FACILITY** from 01/09/24 during the Term of this Agreement.

**4.2.** **FACILITY** agrees to the following table of monthly charges for the Current month:

**Medicaid – weekly claims**
**$6.00 per claim**

**Medicare – monthly claims + discharge claims**

| Claim Count | Monthly Charge |
|---|---|
| < = 5 | $ 750.00 |
| 6 - 10 | $ 1,000.00 |
| 11 - 20 | $ 2,000.00 |
| 21 - 30 | $ 2,900.00 |
| 41 - 50 | $ 3,700.00 |
| 51 - 60 | $ 4,200.00 |
| 61 - 70 | $ 5,200.00 |
| 71 - 80 | $ 5,700.00 |
| 81 - 90 | $ 6,200.00 |
| 91 - 100 | $ 6,700.00 |
| 101+ | $ 7,200.00 |

## SECTION 5 - PAYMENTS, COLLECTIONS, COMPENSATION

**5.** **Invoice Date. PROVIDER** shall provide **FACILITY** with an invoice by the tenth (10th) day of the month for services provided during the previous month. Please be advised that invoices

Compass Initials __*GG*__
Facility Initials _____



are due within 30 days upon receipt.  We request and expect payment of our statements on a current basis, since delayed payment adds to our overall cost of providing services.

**5.1**        Payment Obligation. **FACILITY** acknowledges and agrees that its obligation to pay **PROVIDER** for the billing services provided under this Agreement is separate and distinct from **FACILITY'S** ability to collect payment for such billing services from the patients, Medicare, Medicaid and/or any other insurance program or responsible party, except as otherwise noted herein, and in all cases, **FACILITY** shall be obligated to pay **PROVIDER** for the Services provided pursuant to this Agreement.

**5.2**        **We reserve the right to assess interest at one-and one-half percent (1.5%) per month (18% per annum) on any outstanding balance after thirty (30) days from the statement date.**  Past due balance is considered a material breach of the agreement and **PROVIDER**, may, at its option, without notice, suspend or cancel service until the past due balance is paid in full.

**5.3**        Any disputed charges may, upon notice to **PROVIDER,** be withheld for a period not to exceed thirty (30) days, during which time both parties shall attempt to reconcile the dispute.

**5.4**        Collection Costs. **FACILITY** agrees to reimburse **PROVIDER** for any and all collection fees, legal/attorney fees, court costs, and other costs associated with **PROVIDER'S** attempt(s) to collect payment.

## SECTION 6 - FACILITY

**6.**      **PROVIDER** shall be the sole provider for the services enumerated in this agreement. **FACILITY** agrees to use **PROVIDER** exclusively for Medicare services described herein, except for those services provided by **FACILITY** employees while agreement is in place.

**6.1**        **FACILITY** shall not give, convey, transfer, assign, allow or release to another provider, person, entity, or organization any hardware or software provided by **PROVIDER.**

## SECTION 7 - NATURE OF RELATIONSHIP

**7.**      Both parties agree that **PROVIDER** is not an agent, servant, or employee of the **FACILITY. PROVIDER** has no authority to obligate or bind the **FACILITY. PROVIDER** shall retain sole and absolute discretion and judgment in the manner and means of providing the services in Section 2 to the **FACILITY.**

## SECTION 8 - MODIFICATION AND TERMINATION

**8.**      **PROVIDER** or **FACILITY** may from time to time, request changes in the scope of the services to be performed hereunder or the compensation payable thereof. Such changes, including

Compass Initials  _GG_

Facility Initials  _____



any change in the amount of **PROVIDER'S** compensation, shall be valid, only if incorporated as a written amendment to this agreement.

**8.1**        In the event for the need for termination, either party may elect to do so with a thirty (30) day notice via certified mail to the address listed in Section 9.0. Such terms include the ability for **FACILITY** to terminate this agreement for any reason at **FACILITY'S** discretion.

**8.2**        Upon failure of Facility to tender payment of all amounts due hereunder by the due date, Compass shall have the right to suspend service until such amounts are paid. If amounts due are not paid within 30 days of the due date Compass shall have the right to terminate this Agreement with five (5) days written notice to Facility.

## SECTION 9 - COMPASS RESOURCES

**9.**        Any property which is provided by **PROVIDER** for the purpose of fulfilling **PROVIDER** services shall be returned within five (5) working days of the termination of agreement, in an acceptable, working condition. Any damages, missing items, losses, alterations, or modifications regarding said property will be assessed and charged to the **FACILITY** at replacement value.

## SECTION 10 - NOTICES

**10.**        Any notices called for under the terms of this agreement shall be in writing and shall be considered effective as of the date of deposit with the United States Postal Service by certified or registered mail, postage prepaid, return receipt requested and addressed to the parties as follows:

| **PROVIDER:** | **FACILITY:** |
|---|---|
| Compass Medicare Billing LLC | Remarkable Healthcare of Dallas, LP |
| 9065 Harmony Drive | P.O. Box 164966 |
| Midwest City, OK 73130 | Fort Worth, TX  76161-4966 |

## SECTION 11 - CONFIDENTIALITY

**11.**        It is understood and agreed that the services to be performed by **PROVIDER** are personal in character and **PROVIDER** agrees that all information or records obtained in the course of providing services to **FACILITY** be subject to strict confidentiality.

Compass Initials  _GG_

Facility Initials  _____



## SECTION 12 - WARRANTY AND WARRANTY EXCLUSIONS; LIMITATION OF LIABILITIES; INDEMNITY

**12.** The sole warranty of the services provided by **PROVIDER** hereunder is that such services shall be provided in a manner consistent with the standard of care for that community and to the best ability of **PROVIDER**. All other express warranties are hereby expressly disclaimed and negated, and all implied warranties which may exist under the law with respect to the services performed by **PROVIDER** are hereby expressly disclaimed and negated; specifically, without limiting the generality of the foregoing, any implied warranty of merchantability or fitness for a particular purpose of the services provided by **PROVIDER** are hereby negated and disclaimed.

**12.1** **PROVIDER** shall not be liable in any event for any incidental or consequential damages arising out of the services performed by **PROVIDER** hereunder, it being acknowledged and agreed that the remedies of **FACILITY** in the event of an alleged breach by **PROVIDER** are limited to the performance of the duties or refund of the price as negotiated.

**12.2** **PROVIDER** shall not be responsible, nor liable for any delays and/or consequences whatsoever occasioned by the conduct, action(s), non-action(s) and/or omission(s) of any governmental entity, including, but not limited to the United States of America and any agency(ies) thereof, the State of Texas and any agency(ies) thereof, and particularly the Centers for Medicare and Medicaid Services (CMS) and Texas Medicaid , regarding any and all services, payments, actions and affiliations provided by governmental entity(ies). Further, **PROVIDER** shall not be responsible nor liable for any delays and/or consequences whatsoever occasioned by the conduct, action(s), non-action(s) and/or omission(s) of any third-party health care provider(s) or intermediary(ies) associated, in any manner with services rendered by **PROVIDER**.

**12.3** **PROVIDER** shall not be held liable for and **FACILITY** expressly agrees to indemnify **PROVIDER** against any actions conducted by the **FACILITY** and/or its employees, which may be construed as deceitful or fraudulent. Likewise, **PROVIDER** shall indemnify the **FACILITY** for any actions conducted by **PROVIDER** employees who may be construed as deceitful and fraudulent. Neither party shall be held liable for any acts or omissions by the **FACILITY** or **PROVIDER** and their respective employees, which result in delays, audits, investigations, penalties, or other actions by any governmental or related entity.

It is agreed between the parties hereto that should any courses of action as to construe this agreement, interpret its covenants or enforce provisions thereof arise, both Parties will submit to binding arbitration in Oklahoma County, Oklahoma. It is further agreed that in the event of a breach by **PROVIDER** of its obligations hereunder, the sole and exclusive remedy of **FACILITY** in binding arbitration shall be to require **PROVIDER** to re-perform the alleged faulty services within the federally allowed time frame for claims to 1) minimize any potential losses, 2) avoid federal



penalties; 3) recoup any lost funds from non-filed claims and reports; at the cost to **PROVIDER** or to refund the portion of the fees paid for those services. It is expressly acknowledged that **PROVIDER** is not liable for any result or consequence which arises from **FACILITY'S** failure to comply with the procedures provided to **FACILITY** by **PROVIDER** for the purpose of accurate and complete billing of Medicare.

## SECTION 13 - GOVERNING LAW

**13.**    This agreement is executed under and shall be construed and enforced according to laws of the State of Oklahoma. **FACILITY** agrees that it is subject to the personal jurisdiction of the State and Federal Courts of Oklahoma in any action by **PROVIDER** to enforce the terms hereof.

## SECTION 14 - CIVIL RIGHTS

**14.**    **PROVIDER** agrees to comply with Title VI of the Civil Rights Act of 1964 and all requirements imposed by or pursuant to the regulation of the Department of Health, Education and Welfare (45 C.F.R. Part 90) issued pursuant to that Title, to the end that no person in the United States shall, on the ground of race, color, sex, age, disability, national origin or Veteran status be excluded from participation in, be denied benefits, or be otherwise subjected to discrimination under any program or activity for which federal funds are used in support of **PROVIDER** activities.

**14.1**    This agreement constitutes the entire agreement between the parties with respect to the transactions contemplated hereby and supersedes all prior agreements, arrangements or undertakings relating to the subject matter hereof. No covenant or condition not expressed in this agreement shall be deemed to interpret, change, or restrict this agreement. This agreement may be amended only in writing signed by all of the parties hereto.

## SECTION 15 - HIPAA COMPLIANCE

**15.**    **PROVIDER** will appropriately safeguard all data that is protected health information, as defined in the Health Insurance Portability and Accountability Act of 1996, as it may be amended from time to time ("HIPAA"). **PROVIDER** shall be permitted to use and disclose the protected health information as follows. **PROVIDER** may use and disclose protected health information (i) to carry out billing operations and payment or health care operations, as contemplated by this Agreement.  With respect to information it has received from **FACILITY, PROVIDER** will:

**15.1**    Not use or further disclose the information other than as permitted or required by this Agreement, without consent of FACILIY, or as required by law;

Compass Initials  _GG_

Facility Initials  _____



**15.2** Use appropriate safeguards to prevent use or disclosure of the information other than as provided for by this Agreement, without consent of FACIITY;

**15.3** Report to **FACILITY** any use or disclosure of the information not provided for by this Agreement of which **PROVIDER** becomes aware;

**15.4** Ensure that any agents, including a subcontractor, to whom **PROVIDER** provides protected health information received from, or created or received by **PROVIDER** on behalf of, **FACILITY** agrees to the same restrictions and conditions that apply to **FACILITY** with respect to such information;

**15.5** Make available protected health information in accordance with 45 CFR § 164.254;

**15.6** Make available protected health information for amendment and incorporate any amendments to protected health information in accordance with 45 CFR § 164.526;

**15.7** Make available the information required to provide an accounting of disclosures in accordance with 45 CFR §528;

**15.8** Make its internal practices, books and records relating to the use and disclosure of protected health information received from, or created or received by **PROVIDER** on behalf of, **FACILITY** available to the Secretary of Health and Human Services for purposes of determining **FACILITY'**S compliance with 45 CFR §§ 164.500 - 534; and

**15.9** At termination of this Agreement, if feasible, return or destroy all protected health information received from, or created or received by **PROVIDER** on behalf of, **FACILITY** that **PROVIDER** still maintains in any form and retain no copies of such information, or if such return or destruction is not feasible, extend the precautions of this Agreement to the information and limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible.

**15.10** **PROVIDER** may disclose the information it has received from **FACILITY** for such purposes: (a) as required by law. or (b) to other person(s) who give reasonable assurances to **PROVIDER** that the information will be held confidentially and used or further disclosed only as required by law or for the purpose for which it was disclosed to such person, and that such person(s) will notify **PROVIDER** of any instances of which it is aware in which the confidentiality of the information has been breached.

Compass Initials  _GG_

Facility Initials  _____



In witness hereto, the parties hereto have read, understand, and agree to all terms set forth herein and caused this agreement to be executed and signed by their duly authorized officers.

**Compass Medicare Billing LLC**

Effective this ___**1/9/24**_____

_Greg Guymon_____1/9/24_____
Signature & Date

Greg Guymon, President

Facility

_____1/9/24_____
Signature & Date

Laurie Beth McPike, President/CEO_
Printed Name & Title

**<u>Addendum A</u>**



**9065 Harmony Drive**
**Midwest City, OK 73130**
**Phone: 405-451-0550**
**Fax: 866-451-0350**

## BILLING SERVICE AGREEMENT

This Agreement is made by and between <u>Remarkable Healthcare of Fort Worth, LP</u> (hereinafter referred to as "**FACILITY**"), with its office and principal place of business at <u>6649 N. Riverside Dr., Fort Worth, TX  76137</u> (the "**FACILITY ADDRESS**") and Compass Medicare Billing LLC (hereinafter referred to as "**PROVIDER**"), with its office and principal place of business at <u>9065 Harmony Drive, Midwest City, OK 73130</u>. The effective date of the said service agreement shall commence on the "**AGREEMENT EFFECTIVE DATE**" as agreed upon by both parties.

## SECTION 1 - TERM

**1.**     The term of this agreement shall be twenty-four (24) months commencing with the date of this agreement. This agreement shall automatically renew for an additional twelve (12) month period, unless terminated by either party pursuant to the terms herein. This Agreement may be terminated by **FACILITY** or **PROVIDER** for any reason upon thirty (30) days written notice.  The indicated rates and charges will be effective until termination date after which date the basis for computing charges will be in accordance with the Agreement.

## SECTION 2 - SERVICES

**2.**     Pursuant to the terms and conditions of this agreement, **PROVIDER** offers the following services:

**2.1.**     Provide Medicare monthly and discharge billing;

**2.2.**     Provide Medicaid weekly and discharge billing;

**2.3.**     Cross-bill to Medicaid and Third Party Insurance Companies as necessary, for claims that do not automatically crossover;

**2.4.**     Verify patient Medicare eligibility via Common Working File (CWF);

**2.5.**     Consult as to Policy & Procedures as they relate to Medicare;

**2.6.**     Assist with Medicare/Managed Care denials;

**2.7.**     File all primary and secondary private insurance claims;

**2.8.**     Batch bill flu shots and Covid shots on a yearly basis; and

Compass Initials  *GG*
Facility Initials  _____



**2.9.**     Confirm  patient statements to are accurate in system and ready Facility for collection;

## SECTION 3 - BILLING SERVICES

**3.**    **PROVIDER** shall provide **FACILITY** with a set of procedures for the collection, recordation and preservation of all data, forms, and documents essential to the effective documentation of reimbursable Medicare activities and services. **FACILITY** agrees to maintain and keep current all such forms and documents according to the stated procedures. Failure to do so may result in inaccurate and/or incomplete Medicare reimbursement and/or penalties for which **PROVIDER** shall not be responsible.

**3.1.**     **PROVIDER** shall use reasonable efforts to affect collections of claims and to address denials. **PROVIDER'S** Services related to denials shall be limited to that of assisting **FACILITY** with communication to Payer and production of records Payer during the appeal process once **FACILITY** has initiated such appeal.  All duties of **PROVIDER** relating to the appeal process shall cease upon the Payer's decision to pay such claim or issuing a statement stating the appeals process has been exhausted.  All expense shall be the responsibility of **FACILITY**.

**3.2.**     **FACILITY** agrees to keep current all correspondence regarding the billing of intermediaries and third-party providers as to not inhibit the billing process or collection of funds.

**3.3.**     **PROVIDER,** shall, on a monthly basis, furnish **FACILITY** the Medicare Remittance Advice depicting the amount of each payment received from Medicare the date thereof.

**3.4.**     **FACILITY** shall provide access to copies of all Explanation of Medical Benefits and Remittance Advices to **PROVIDER** within five working days of receipt.

**3.5.**     Upon termination of this agreement, **PROVIDER** will complete the processing of all primary claims delivered to **PROVIDER** prior to the termination date.

**3.6.**     **FACILITY** authorizes and agrees to cooperate with **PROVIDER'S** efforts to contact patients in order to confirm or augment the claim information provided under this agreement. Any attempts by **PROVIDER** to collect self-pay balances will require prior authorization and additional fees may apply from the facility.

**3.7.**     Each party shall maintain true and correct records of the accounts subject to this agreement.



**3.8.**     Each party, upon request, shall have the right to audit the accounts to verify the accounting of all funds and accuracy and appropriateness of all charges.  For applicable accounts agreed upon, FACILITY and PROVIDER.


## SECTION 4 - FEES

**4.**     **FACILITY** agrees to pay a fee $375 one-time set-up fee. In the event **PROVIDER** is required to modify or change the clearinghouse "host", **FACILITY** agrees to pay an additional $1,125. Further, **FACILITY** agrees to pay **PROVIDER** for the services provided in section 2.0 as listed below:

**4.1.**     In consideration for the Billing Services provided in Section 3, the **FACILITY** agrees to pay the **PROVIDER** a fee equal to 8% for Medicare and 10% for Managed Care/Private Insurance of the total Collections of receivables .that are collected by PROVIDER.. For purposes of this Section 4.1 only, the term "Collections" refers to the actual funds received by the **FACILITY** from 01/09/24 during the Term of this Agreement.

**4.2.**     **FACILITY** agrees to the following table of monthly charges for the Current month:

**Medicaid – weekly claims**
**$6.00 per claim**

**Medicare – monthly claims + discharge claims**

| Claim Count | Monthly Charge |
|---|---|
| < = 5 | $     750.00 |
| 6 - 10 | $   1,000.00 |
| 11 - 20 | $   2,000.00 |
| 21 - 30 | $   2,900.00 |
| 41 - 50 | $   3,700.00 |
| 51 - 60 | $   4,200.00 |
| 61 - 70 | $   5,200.00 |
| 71 - 80 | $   5,700.00 |
| 81 - 90 | $   6,200.00 |
| 91 - 100 | $   6,700.00 |
| 101+ | $   7,200.00 |

## SECTION 5 - PAYMENTS, COLLECTIONS, COMPENSATION

**5.**     **Invoice Date. PROVIDER** shall provide **FACILITY** with an invoice by the tenth (10th) day of the month for services provided during the previous month. Please be advised that invoices

Compass Initials __GG__
Facility Initials _____



are due within 30 days upon receipt. We request and expect payment of our statements on a current basis, since delayed payment adds to our overall cost of providing services.

**5.1** Payment Obligation. **FACILITY** acknowledges and agrees that its obligation to pay **PROVIDER** for the billing services provided under this Agreement is separate and distinct from **FACILITY'S** ability to collect payment for such billing services from the patients, Medicare, Medicaid and/or any other insurance program or responsible party, except as otherwise noted herein, and in all cases, **FACILITY** shall be obligated to pay **PROVIDER** for the Services provided pursuant to this Agreement.

**5.2** **We reserve the right to assess interest at one-and one-half percent (1.5%) per month (18% per annum) on any outstanding balance after thirty (30) days from the statement date.** Past due balance is considered a material breach of the agreement and **PROVIDER**, may, at its option, without notice, suspend or cancel service until the past due balance is paid in full.

**5.3** Any disputed charges may, upon notice to **PROVIDER,** be withheld for a period not to exceed thirty (30) days, during which time both parties shall attempt to reconcile the dispute.

**5.4** Collection Costs. **FACILITY** agrees to reimburse **PROVIDER** for any and all collection fees, legal/attorney fees, court costs, and other costs associated with **PROVIDER'S** attempt(s) to collect payment.

## SECTION 6 - FACILITY

**6.** **PROVIDER** shall be the sole provider for the services enumerated in this agreement. **FACILITY** agrees to use **PROVIDER** exclusively for Medicare services described herein, except for those services provided by **FACILITY** employees while agreement is in place.

**6.1** **FACILITY** shall not give, convey, transfer, assign, allow or release to another provider, person, entity, or organization any hardware or software provided by **PROVIDER.**

## SECTION 7 - NATURE OF RELATIONSHIP

**7.** Both parties agree that **PROVIDER** is not an agent, servant, or employee of the **FACILITY. PROVIDER** has no authority to obligate or bind the **FACILITY. PROVIDER** shall retain sole and absolute discretion and judgment in the manner and means of providing the services in Section 2 to the **FACILITY.**

## SECTION 8 - MODIFICATION AND TERMINATION

**8.** **PROVIDER** or **FACILITY** may from time to time, request changes in the scope of the services to be performed hereunder or the compensation payable thereof. Such changes, including

Compass Initials  *GG*

Facility Initials  _____



any change in the amount of **PROVIDER'S** compensation, shall be valid, only if incorporated as a written amendment to this agreement.

**8.1**     In the event for the need for termination, either party may elect to do so with a thirty (30) day notice via certified mail to the address listed in Section 9.0. Such terms include the ability for **FACILITY** to terminate this agreement for any reason at **FACILITY'S** discretion.

**8.2**     Upon failure of Facility to tender payment of all amounts due hereunder by the due date, Compass shall have the right to suspend service until such amounts are paid. If amounts due are not paid within 30 days of the due date Compass shall have the right to terminate this Agreement with five (5) days written notice to Facility.

## SECTION 9 - COMPASS RESOURCES

**9.**     Any property which is provided by **PROVIDER** for the purpose of fulfilling **PROVIDER** services shall be returned within five (5) working days of the termination of agreement, in an acceptable, working condition. Any damages, missing items, losses, alterations, or modifications regarding said property will be assessed and charged to the **FACILITY** at replacement value.

## SECTION 10 - NOTICES

**10.**     Any notices called for under the terms of this agreement shall be in writing and shall be considered effective as of the date of deposit with the United States Postal Service by certified or registered mail, postage prepaid, return receipt requested and addressed to the parties as follows:

**PROVIDER:**                                          **FACILITY:**

Compass Medicare Billing LLC                  Remarkable Healthcare of Fort Worth,
9065 Harmony Drive                                   P.O. Box 164966
Midwest City, OK 73130                             Fort Worth, TX  76161-4966

## SECTION 11 - CONFIDENTIALITY

**11.**     It is understood and agreed that the services to be performed by **PROVIDER** are personal in character and **PROVIDER** agrees that all information or records obtained in the course of providing services to **FACILITY** be subject to strict confidentiality.

Compass Initials  _GG_
Facility Initials  _____



## SECTION 12 - WARRANTY AND WARRANTY EXCLUSIONS; LIMITATION OF LIABILITIES; INDEMNITY

**12.**     The sole warranty of the services provided by **PROVIDER** hereunder is that such services shall be provided in a manner consistent with the standard of care for that community and to the best ability of **PROVIDER**. All other express warranties are hereby expressly disclaimed and negated, and all implied warranties which may exist under the law with respect to the services performed by **PROVIDER** are hereby expressly disclaimed and negated; specifically, without limiting the generality of the foregoing, any implied warranty of merchantability or fitness for a particular purpose of the services provided by **PROVIDER** are hereby negated and disclaimed.

**12.1**     **PROVIDER** shall not be liable in any event for any incidental or consequential damages arising out of the services performed by **PROVIDER** hereunder, it being acknowledged and agreed that the remedies of **FACILITY** in the event of an alleged breach by **PROVIDER** are limited to the performance of the duties or refund of the price as negotiated.

**12.2**     **PROVIDER** shall not be responsible, nor liable for any delays and/or consequences whatsoever occasioned by the conduct, action(s), non-action(s) and/or omission(s) of any governmental entity, including, but not limited to the United States of America and any agency(ies) thereof, the State of Texas and any agency(ies) thereof, and particularly the Centers for Medicare and Medicaid Services (CMS) and Texas Medicaid , regarding any and all services, payments, actions and affiliations provided by governmental entity(ies). Further, **PROVIDER** shall not be responsible nor liable for any delays and/or consequences whatsoever occasioned by the conduct, action(s), non-action(s) and/or omission(s) of any third-party health care provider(s) or intermediary(ies) associated, in any manner with services rendered by **PROVIDER**.

**12.3**     **PROVIDER** shall not be held liable for and **FACILITY** expressly agrees to indemnify **PROVIDER** against any actions conducted by the **FACILITY** and/or its employees, which may be construed as deceitful or fraudulent. Likewise, **PROVIDER** shall indemnify the **FACILITY** for any actions conducted by **PROVIDER** employees who may be construed as deceitful and fraudulent. Neither party shall be held liable for any acts or omissions by the **FACILITY** or **PROVIDER** and their respective employees, which result in delays, audits, investigations, penalties, or other actions by any governmental or related entity.

It is agreed between the parties hereto that should any courses of action as to construe this agreement, interpret its covenants or enforce provisions thereof arise, both Parties will submit to binding arbitration in Oklahoma County, Oklahoma. It is further agreed that in the event of a breach by **PROVIDER** of its obligations hereunder, the sole and exclusive remedy of **FACILITY** in binding arbitration shall be to require **PROVIDER** to re-perform the alleged faulty services within the federally allowed time frame for claims to 1) minimize any potential losses, 2) avoid federal

Compass Initials  *GG*

Facility Initials  _____



penalties; 3) recoup any lost funds from non-filed claims and reports; at the cost to **PROVIDER** or to refund the portion of the fees paid for those services. It is expressly acknowledged that **PROVIDER** is not liable for any result or consequence which arises from **FACILITY'S** failure to comply with the procedures provided to **FACILITY** by **PROVIDER** for the purpose of accurate and complete billing of Medicare.

## SECTION 13 - GOVERNING LAW

**13.**     This agreement is executed under and shall be construed and enforced according to laws of the State of Oklahoma. **FACILITY** agrees that it is subject to the personal jurisdiction of the State and Federal Courts of Oklahoma in any action by **PROVIDER** to enforce the terms hereof.

## SECTION 14 - CIVIL RIGHTS

**14.**     **PROVIDER** agrees to comply with Title VI of the Civil Rights Act of 1964 and all requirements imposed by or pursuant to the regulation of the Department of Health, Education and Welfare (45 C.F.R. Part 90) issued pursuant to that Title, to the end that no person in the United States shall, on the ground of race, color, sex, age, disability, national origin or Veteran status be excluded from participation in, be denied benefits, or be otherwise subjected to discrimination under any program or activity for which federal funds are used in support of **PROVIDER** activities.

**14.1**     This agreement constitutes the entire agreement between the parties with respect to the transactions contemplated hereby and supersedes all prior agreements, arrangements or undertakings relating to the subject matter hereof. No covenant or condition not expressed in this agreement shall be deemed to interpret, change, or restrict this agreement. This agreement may be amended only in writing signed by all of the parties hereto.

## SECTION 15 - HIPAA COMPLIANCE

**15.**     **PROVIDER** will appropriately safeguard all data that is protected health information, as defined in the Health Insurance Portability and Accountability Act of 1996, as it may be amended from time to time ("HIPAA"). **PROVIDER** shall be permitted to use and disclose the protected health information as follows. **PROVIDER** may use and disclose protected health information (i) to carry out billing operations and payment or health care operations, as contemplated by this Agreement.   With respect to information it has received from **FACILITY, PROVIDER** will:

**15.1**     Not use or further disclose the information other than as permitted or required by this Agreement, without consent of FACILIY, or as required by law;

Compass Initials  *GG*
Facility Initials  _____



**15.2**     Use appropriate safeguards to prevent use or disclosure of the information other than as provided for by this Agreement, without consent of FACIITY;

**15.3**     Report to **FACILITY** any use or disclosure of the information not provided for by this Agreement of which **PROVIDER** becomes aware;

**15.4**     Ensure that any agents, including a subcontractor, to whom **PROVIDER** provides protected health information received from, or created or received by **PROVIDER** on behalf of, **FACILITY** agrees to the same restrictions and conditions that apply to **FACILITY** with respect to such information;

**15.5**     Make available protected health information in accordance with 45 CFR § 164.254;

**15.6**     Make available protected health information for amendment and incorporate any amendments to protected health information in accordance with 45 CFR § 164.526;

**15.7**     Make available the information required to provide an accounting of disclosures in accordance with 45 CFR §528;

**15.8**     Make its internal practices, books and records relating to the use and disclosure of protected health information received from, or created or received by **PROVIDER** on behalf of, **FACILITY** available to the Secretary of Health and Human Services for purposes of determining **FACILITY**'S compliance with 45 CFR §§ 164.500 - 534; and

**15.9**     At termination of this Agreement, if feasible, return or destroy all protected health information received from, or created or received by **PROVIDER** on behalf of, **FACILITY** that **PROVIDER** still maintains in any form and retain no copies of such information, or if such return or destruction is not feasible, extend the precautions of this Agreement to the information and limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible.

**15.10**     **PROVIDER** may disclose the information it has received from **FACILITY** for such purposes: (a) as required by law. or (b) to other person(s) who give reasonable assurances to **PROVIDER** that the information will be held confidentially and used or further disclosed only as required by law or for the purpose for which it was disclosed to such person, and that such person(s) will notify **PROVIDER** of any instances of which it is aware in which the confidentiality of the information has been breached.

Compass Initials  *GG*

Facility Initials  _____



In witness hereto, the parties hereto have read, understand, and agree to all terms set forth herein and caused this agreement to be executed and signed by their duly authorized officers.

**<u>Compass Medicare Billing LLC</u>**

Effective this _____**1/9/24**_____

_Greg Guymon_____1/9/24_____
Signature & Date

<u>Greg Guymon, President</u>

Facility

_____1/9/24_____
Signature & Date

Laurie Beth McPike, President/CEO
Printed Name & Title

Compass Initials _GG_
Facility Initials _____

**Addendum A**



**9065 Harmony Drive**
**Midwest City, OK 73130**
**Phone: 405-451-0550**
**Fax: 866-451-0350**

## BILLING SERVICE AGREEMENT

This Agreement is made by and between Remarkable Healthcare of Prestonwood, LP (hereinafter referred to as "**FACILITY**"), with its office and principal place of business at 4501 Plano Pkwy., Carrollton, TX 75010 (the "**FACILITY ADDRESS**") and Compass Medicare Billing LLC (hereinafter referred to as "**PROVIDER**),** with its office and principal place of business at 9065 Harmony Drive, Midwest City, OK 73130. The effective date of the said service agreement shall commence on the "**AGREEMENT EFFECTIVE DATE**" as agreed upon by both parties.

## SECTION 1 - TERM

**1.** The term of this agreement shall be twenty-four (24) months commencing with the date of this agreement. This agreement shall automatically renew for an additional twelve (12) month period, unless terminated by either party pursuant to the terms herein. This Agreement may be terminated by **FACILITY** or **PROVIDER** for any reason upon thirty (30) days written notice. The indicated rates and charges will be effective until termination date after which date the basis for computing charges will be in accordance with the Agreement.

## SECTION 2 - SERVICES

**2.** Pursuant to the terms and conditions of this agreement, **PROVIDER** offers the following services:

**2.1.** Provide Medicare monthly and discharge billing;

**2.2.** Provide Medicaid weekly and discharge billing;

**2.3.** Cross-bill to Medicaid and Third Party Insurance Companies as necessary, for claims that do not automatically crossover;

**2.4.** Verify patient Medicare eligibility via Common Working File (CWF);

**2.5.** Consult as to Policy & Procedures as they relate to Medicare;

**2.6.** Assist with Medicare/Managed Care denials;

**2.7.** File all primary and secondary private insurance claims;

**2.8.** Batch bill flu shots and Covid shots on a yearly basis; and



**2.9.**        Confirm  patient statements to are accurate in system and ready Facility for collection;

## SECTION 3 - BILLING SERVICES

**3.**    **PROVIDER** shall provide **FACILITY** with a set of procedures for the collection, recordation and preservation of all data, forms, and documents essential to the effective documentation of reimbursable Medicare activities and services. **FACILITY** agrees to maintain and keep current all such forms and documents according to the stated procedures. Failure to do so may result in inaccurate and/or incomplete Medicare reimbursement and/or penalties for which **PROVIDER** shall not be responsible.

**3.1.**        **PROVIDER** shall use reasonable efforts to affect collections of claims and to address denials. **PROVIDER'S** Services related to denials shall be limited to that of assisting **FACILITY** with communication to Payer and production of records Payer during the appeal process once **FACILITY** has initiated such appeal.  All duties of **PROVIDER** relating to the appeal process shall cease upon the Payer's decision to pay such claim or issuing a statement stating the appeals process has been exhausted.  All expense shall be the responsibility of **FACILITY**.

**3.2.**        **FACILITY** agrees to keep current all correspondence regarding the billing of intermediaries and third-party providers as to not inhibit the billing process or collection of funds.

**3.3.**        **PROVIDER,** shall, on a monthly basis, furnish **FACILITY** the Medicare Remittance Advice depicting the amount of each payment received from Medicare the date thereof.

**3.4.**        **FACILITY** shall provide access to copies of all Explanation of Medical Benefits and Remittance Advices to **PROVIDER** within five working days of receipt.

**3.5.**        Upon termination of this agreement, **PROVIDER** will complete the processing of all primary claims delivered to **PROVIDER** prior to the termination date.

**3.6.**        **FACILITY** authorizes and agrees to cooperate with **PROVIDER'S** efforts to contact patients in order to confirm or augment the claim information provided under this agreement. Any attempts by **PROVIDER** to collect self-pay balances will require prior authorization and additional fees may apply from the facility.

**3.7.**        Each party shall maintain true and correct records of the accounts subject to this agreement.

Compass Initials  _GG_

Facility Initials  _____



**3.8.** Each party, upon request, shall have the right to audit the accounts to verify the accounting of all funds and accuracy and appropriateness of all charges. For applicable accounts agreed upon, FACILITY and PROVIDER.

## SECTION 4 - FEES

**4.** **FACILITY** agrees to pay a fee $375 one-time set-up fee. In the event **PROVIDER** is required to modify or change the clearinghouse "host", **FACILITY** agrees to pay an additional $1,125. Further, **FACILITY** agrees to pay **PROVIDER** for the services provided in section 2.0 as listed below:

**4.1.** In consideration for the Billing Services provided in Section 3, the **FACILITY** agrees to pay the **PROVIDER** a fee equal to 8% for Medicare and 10% for Managed Care/Private Insurance of the total Collections of receivables .that are collected by PROVIDER.. For purposes of this Section 4.1 only, the term "Collections" refers to the actual funds received by the **FACILITY** from 1/09/24 during the Term of this Agreement.

**4.2.** **FACILITY** agrees to the following table of monthly charges for the Current month:

**Medicaid – weekly claims**
**$6.00 per claim**

**Medicare – monthly claims + discharge claims**

| Claim Count | Monthly Charge |
|---|---|
| < = 5 | $      750.00 |
| 6 - 10 | $   1,000.00 |
| 11 - 20 | $   2,000.00 |
| 21 - 30 | $   2,900.00 |
| 41 - 50 | $   3,700.00 |
| 51 - 60 | $   4,200.00 |
| 61 - 70 | $   5,200.00 |
| 71 - 80 | $   5,700.00 |
| 81 - 90 | $   6,200.00 |
| 91 - 100 | $   6,700.00 |
| 101+ | $   7,200.00 |

## SECTION 5 - PAYMENTS, COLLECTIONS, COMPENSATION

**5.** **Invoice Date. PROVIDER** shall provide **FACILITY** with an invoice by the tenth (10th) day of the month for services provided during the previous month. Please be advised that invoices

Compass Initials __*GG*__
Facility Initials _____



are due within 30 days upon receipt.  We request and expect payment of our statements on a current basis, since delayed payment adds to our overall cost of providing services.

**5.1** Payment Obligation. **FACILITY** acknowledges and agrees that its obligation to pay **PROVIDER** for the billing services provided under this Agreement is separate and distinct from **FACILITY'S** ability to collect payment for such billing services from the patients, Medicare, Medicaid and/or any other insurance program or responsible party, except as otherwise noted herein, and in all cases, **FACILITY** shall be obligated to pay **PROVIDER** for the Services provided pursuant to this Agreement.

**5.2** **We reserve the right to assess interest at one-and one-half percent (1.5%) per month (18% per annum) on any outstanding balance after thirty (30) days from the statement date.** Past due balance is considered a material breach of the agreement and **PROVIDER**, may, at its option, without notice, suspend or cancel service until the past due balance is paid in full.

**5.3** Any disputed charges may, upon notice to **PROVIDER,** be withheld for a period not to exceed thirty (30) days, during which time both parties shall attempt to reconcile the dispute.

**5.4** Collection Costs. **FACILITY** agrees to reimburse **PROVIDER** for any and all collection fees, legal/attorney fees, court costs, and other costs associated with **PROVIDER'S** attempt(s) to collect payment.

## SECTION 6 - FACILITY

**6.** **PROVIDER** shall be the sole provider for the services enumerated in this agreement. **FACILITY** agrees to use **PROVIDER** exclusively for Medicare services described herein, except for those services provided by **FACILITY** employees while agreement is in place.

**6.1** **FACILITY** shall not give, convey, transfer, assign, allow or release to another provider, person, entity, or organization any hardware or software provided by **PROVIDER.**

## SECTION 7 - NATURE OF RELATIONSHIP

**7.** Both parties agree that **PROVIDER** is not an agent, servant, or employee of the **FACILITY. PROVIDER** has no authority to obligate or bind the **FACILITY. PROVIDER** shall retain sole and absolute discretion and judgment in the manner and means of providing the services in Section 2 to the **FACILITY.**

## SECTION 8 - MODIFICATION AND TERMINATION

**8.** **PROVIDER** or **FACILITY** may from time to time, request changes in the scope of the services to be performed hereunder or the compensation payable thereof. Such changes, including

Compass Initials _GG_

Facility Initials _____



any change in the amount of **PROVIDER'S** compensation, shall be valid, only if incorporated as a written amendment to this agreement.

**8.1**       In the event for the need for termination, either party may elect to do so with a thirty (30) day notice via certified mail to the address listed in Section 9.0. Such terms include the ability for **FACILITY** to terminate this agreement for any reason at **FACILITY'S** discretion.

**8.2**       Upon failure of Facility to tender payment of all amounts due hereunder by the due date, Compass shall have the right to suspend service until such amounts are paid. If amounts due are not paid within 30 days of the due date Compass shall have the right to terminate this Agreement with five (5) days written notice to Facility.

## SECTION 9 - COMPASS RESOURCES

**9.**       Any property which is provided by **PROVIDER** for the purpose of fulfilling **PROVIDER** services shall be returned within five (5) working days of the termination of agreement, in an acceptable, working condition. Any damages, missing items, losses, alterations, or modifications regarding said property will be assessed and charged to the **FACILITY** at replacement value.

## SECTION 10 - NOTICES

**10.**       Any notices called for under the terms of this agreement shall be in writing and shall be considered effective as of the date of deposit with the United States Postal Service by certified or registered mail, postage prepaid, return receipt requested and addressed to the parties as follows:

**PROVIDER:**                                    **FACILITY:**

Compass Medicare Billing LLC                     Remarkable Healthcare of
Prestonwood,
9065 Harmony Drive                               P.O. Box 164966
Midwest City, OK 73130                           Fort Worth, TX  76161-4966

## SECTION 11 - CONFIDENTIALITY

**11.**       It is understood and agreed that the services to be performed by **PROVIDER** are personal in character and **PROVIDER** agrees that all information or records obtained in the course of providing services to **FACILITY** be subject to strict confidentiality.



## SECTION 12 - WARRANTY AND WARRANTY EXCLUSIONS; LIMITATION OF LIABILITIES; INDEMNITY

**12.** The sole warranty of the services provided by **PROVIDER** hereunder is that such services shall be provided in a manner consistent with the standard of care for that community and to the best ability of **PROVIDER**. All other express warranties are hereby expressly disclaimed and negated, and all implied warranties which may exist under the law with respect to the services performed by **PROVIDER** are hereby expressly disclaimed and negated; specifically, without limiting the generality of the foregoing, any implied warranty of merchantability or fitness for a particular purpose of the services provided by **PROVIDER** are hereby negated and disclaimed.

**12.1** **PROVIDER** shall not be liable in any event for any incidental or consequential damages arising out of the services performed by **PROVIDER** hereunder, it being acknowledged and agreed that the remedies of **FACILITY** in the event of an alleged breach by **PROVIDER** are limited to the performance of the duties or refund of the price as negotiated.

**12.2** **PROVIDER** shall not be responsible, nor liable for any delays and/or consequences whatsoever occasioned by the conduct, action(s), non-action(s) and/or omission(s) of any governmental entity, including, but not limited to the United States of America and any agency(ies) thereof, the State of Texas and any agency(ies) thereof, and particularly the Centers for Medicare and Medicaid Services (CMS) and Texas Medicaid , regarding any and all services, payments, actions and affiliations provided by governmental entity(ies). Further, **PROVIDER** shall not be responsible nor liable for any delays and/or consequences whatsoever occasioned by the conduct, action(s), non-action(s) and/or omission(s) of any third-party health care provider(s) or intermediary(ies) associated, in any manner with services rendered by **PROVIDER**.

**12.3** **PROVIDER** shall not be held liable for and **FACILITY** expressly agrees to indemnify **PROVIDER** against any actions conducted by the **FACILITY** and/or its employees, which may be construed as deceitful or fraudulent. Likewise, **PROVIDER** shall indemnify the **FACILITY** for any actions conducted by **PROVIDER** employees who may be construed as deceitful and fraudulent. Neither party shall be held liable for any acts or omissions by the **FACILITY** or **PROVIDER** and their respective employees, which result in delays, audits, investigations, penalties, or other actions by any governmental or related entity.

It is agreed between the parties hereto that should any courses of action as to construe this agreement, interpret its covenants or enforce provisions thereof arise, both Parties will submit to binding arbitration in Oklahoma County, Oklahoma. It is further agreed that in the event of a breach by **PROVIDER** of its obligations hereunder, the sole and exclusive remedy of **FACILITY** in binding arbitration shall be to require **PROVIDER** to re-perform the alleged faulty services within the federally allowed time frame for claims to 1) minimize any potential losses, 2) avoid federal



penalties; 3) recoup any lost funds from non-filed claims and reports; at the cost to **PROVIDER** or to refund the portion of the fees paid for those services. It is expressly acknowledged that **PROVIDER** is not liable for any result or consequence which arises from **FACILITY'S** failure to comply with the procedures provided to **FACILITY** by **PROVIDER** for the purpose of accurate and complete billing of Medicare.

## SECTION 13 - GOVERNING LAW

**13.**    This agreement is executed under and shall be construed and enforced according to laws of the State of Oklahoma. **FACILITY** agrees that it is subject to the personal jurisdiction of the State and Federal Courts of Oklahoma in any action by **PROVIDER** to enforce the terms hereof.

## SECTION 14 - CIVIL RIGHTS

**14.**    **PROVIDER** agrees to comply with Title VI of the Civil Rights Act of 1964 and all requirements imposed by or pursuant to the regulation of the Department of Health, Education and Welfare (45 C.F.R. Part 90) issued pursuant to that Title, to the end that no person in the United States shall, on the ground of race, color, sex, age, disability, national origin or Veteran status be excluded from participation in, be denied benefits, or be otherwise subjected to discrimination under any program or activity for which federal funds are used in support of **PROVIDER** activities.

**14.1**    This agreement constitutes the entire agreement between the parties with respect to the transactions contemplated hereby and supersedes all prior agreements, arrangements or undertakings relating to the subject matter hereof. No covenant or condition not expressed in this agreement shall be deemed to interpret, change, or restrict this agreement. This agreement may be amended only in writing signed by all of the parties hereto.

## SECTION 15 - HIPAA COMPLIANCE

**15.**    **PROVIDER** will appropriately safeguard all data that is protected health information, as defined in the Health Insurance Portability and Accountability Act of 1996, as it may be amended from time to time ("HIPAA"). **PROVIDER** shall be permitted to use and disclose the protected health information as follows. **PROVIDER** may use and disclose protected health information (i) to carry out billing operations and payment or health care operations, as contemplated by this Agreement.  With respect to information it has received from **FACILITY, PROVIDER** will:

**15.1**    Not use or further disclose the information other than as permitted or required by this Agreement, without consent of FACILIY, or as required by law;

Compass Initials  *GG*
Facility Initials  _____



**15.2**      Use appropriate safeguards to prevent use or disclosure of the information other than as provided for by this Agreement, without consent of FACIITY;

**15.3**      Report to **FACILITY** any use or disclosure of the information not provided for by this Agreement of which **PROVIDER** becomes aware;

**15.4**      Ensure that any agents, including a subcontractor, to whom **PROVIDER** provides protected health information received from, or created or received by **PROVIDER** on behalf of, **FACILITY** agrees to the same restrictions and conditions that apply to **FACILITY** with respect to such information;

**15.5**      Make available protected health information in accordance with 45 CFR § 164.254;

**15.6**      Make available protected health information for amendment and incorporate any amendments to protected health information in accordance with 45 CFR § 164.526;

**15.7**      Make available the information required to provide an accounting of disclosures in accordance with 45 CFR §528;

**15.8**      Make its internal practices, books and records relating to the use and disclosure of protected health information received from, or created or received by **PROVIDER** on behalf of, **FACILITY** available to the Secretary of Health and Human Services for purposes of determining **FACILITY**'S compliance with 45 CFR §§ 164.500 - 534; and

**15.9**      At termination of this Agreement, if feasible, return or destroy all protected health information received from, or created or received by **PROVIDER** on behalf of, **FACILITY** that **PROVIDER** still maintains in any form and retain no copies of such information, or if such return or destruction is not feasible, extend the precautions of this Agreement to the information and limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible.

**15.10**     **PROVIDER** may disclose the information it has received from **FACILITY** for such purposes: (a) as required by law. or (b) to other person(s) who give reasonable assurances to **PROVIDER** that the information will be held confidentially and used or further disclosed only as required by law or for the purpose for which it was disclosed to such person, and that such person(s) will notify **PROVIDER** of any instances of which it is aware in which the confidentiality of the information has been breached.

Compass Initials  *GG*

Facility Initials  _____



In witness hereto, the parties hereto have read, understand, and agree to all terms set forth herein and caused this agreement to be executed and signed by their duly authorized officers.

**<u>Compass Medicare Billing LLC</u>**

Effective this ___**1/9/24**_____

_Greg Guymon_____1/9/24_____
Signature & Date

<u>Greg Guymon, President</u>

Facility

_____1/9/24_____
Signature & Date

_Laurie Beth McPike, President/CEO_____
Printed Name & Title

Compass Initials __*GG*__
Facility Initials _____

**Addendum A**



**9065 Harmony Drive**
**Midwest City, OK 73130**
**Phone: 405-451-0550**
**Fax: 866-451-0350**

## BILLING SERVICE AGREEMENT

This Agreement is made by and between <u>Remarkable Healthcare of Seguin, LP</u> (hereinafter referred to as "**FACILITY**"), with its office and principal place of business at <u>1339 Eastwood Dr., Seguin, TX  78155</u> (the "**FACILITY ADDRESS**") and Compass Medicare Billing LLC (hereinafter referred to as "**PROVIDER**"), with its office and principal place of business at <u>9065 Harmony Drive, Midwest City, OK 73130</u>. The effective date of the said service agreement shall commence on the "**AGREEMENT EFFECTIVE DATE**" as agreed upon by both parties.

## SECTION 1 - TERM

**1.**    The term of this agreement shall be twenty-four (24) months commencing with the date of this agreement. This agreement shall automatically renew for an additional twelve (12) month period, unless terminated by either party pursuant to the terms herein. This Agreement may be terminated by **FACILITY** or **PROVIDER** for any reason upon thirty (30) days written notice.  The indicated rates and charges will be effective until termination date after which date the basis for computing charges will be in accordance with the Agreement.

## SECTION 2 - SERVICES

**2.**    Pursuant to the terms and conditions of this agreement, **PROVIDER** offers the following services:

**2.1.**    Provide Medicare monthly and discharge billing;

**2.2.**    Provide Medicaid weekly and discharge billing;

**2.3.**    Cross-bill to Medicaid and Third Party Insurance Companies as necessary, for claims that do not automatically crossover;

**2.4.**    Verify patient Medicare eligibility via Common Working File (CWF);

**2.5.**    Consult as to Policy & Procedures as they relate to Medicare;

**2.6.**    Assist with Medicare/Managed Care denials;

**2.7.**    File all primary and secondary private insurance claims;

**2.8.**    Batch bill flu shots and Covid shots on a yearly basis; and

Compass Initials  _GG_

Facility Initials  _____



**2.9.**       Confirm  patient statements to are accurate in system and ready Facility for collection;

## SECTION 3 - BILLING SERVICES

**3.**    **PROVIDER** shall provide **FACILITY** with a set of procedures for the collection, recordation and preservation of all data, forms, and documents essential to the effective documentation of reimbursable Medicare activities and services. **FACILITY** agrees to maintain and keep current all such forms and documents according to the stated procedures. Failure to do so may result in inaccurate and/or incomplete Medicare reimbursement and/or penalties for which **PROVIDER** shall not be responsible.

**3.1.**       **PROVIDER** shall use reasonable efforts to affect collections of claims and to address denials. **PROVIDER'S** Services related to denials shall be limited to that of assisting **FACILITY** with communication to Payer and production of records Payer during the appeal process once **FACILITY** has initiated such appeal.  All duties of **PROVIDER** relating to the appeal process shall cease upon the Payer's decision to pay such claim or issuing a statement stating the appeals process has been exhausted.  All expense shall be the responsibility of **FACILITY**.

**3.2.**       **FACILITY** agrees to keep current all correspondence regarding the billing of intermediaries and third-party providers as to not inhibit the billing process or collection of funds.

**3.3.**       **PROVIDER,** shall, on a monthly basis, furnish **FACILITY** the Medicare Remittance Advice depicting the amount of each payment received from Medicare the date thereof.

**3.4.**        **FACILITY** shall provide access to copies of all Explanation of Medical Benefits and Remittance Advices to **PROVIDER** within five working days of receipt.

**3.5.**       Upon termination of this agreement, **PROVIDER** will complete the processing of all primary claims delivered to **PROVIDER** prior to the termination date.

**3.6.**       **FACILITY** authorizes and agrees to cooperate with **PROVIDER'S** efforts to contact patients in order to confirm or augment the claim information provided under this agreement. Any attempts by **PROVIDER** to collect self-pay balances will require prior authorization and additional fees may apply from the facility.

**3.7.**       Each party shall maintain true and correct records of the accounts subject to this agreement.



**3.8.** Each party, upon request, shall have the right to audit the accounts to verify the accounting of all funds and accuracy and appropriateness of all charges. For applicable accounts agreed upon, FACILITY and PROVIDER.


## SECTION 4 - FEES

**4.** **FACILITY** agrees to pay a fee $375 one-time set-up fee. In the event **PROVIDER** is required to modify or change the clearinghouse "host", **FACILITY** agrees to pay an additional $1,125. Further, **FACILITY** agrees to pay **PROVIDER** for the services provided in section 2.0 as listed below:

**4.1.** In consideration for the Billing Services provided in Section 3, the **FACILITY** agrees to pay the **PROVIDER** a fee equal to 8% for Medicare and 10% for Managed Care/Private Insurance of the total Collections of receivables .that are collected by PROVIDER.. For purposes of this Section 4.1 only, the term "Collections" refers to the actual funds received by the **FACILITY** from 01/09/24 during the Term of this Agreement.

**4.2.** **FACILITY** agrees to the following table of monthly charges for the Current month:

**Medicaid – weekly claims**
**$6.00 per claim**

**Medicare – monthly claims + discharge claims**

| Claim Count | Monthly Charge |
|---|---|
| < = 5 | $ 750.00 |
| 6 - 10 | $ 1,000.00 |
| 11 - 20 | $ 2,000.00 |
| 21 - 30 | $ 2,900.00 |
| 41 - 50 | $ 3,700.00 |
| 51 - 60 | $ 4,200.00 |
| 61 - 70 | $ 5,200.00 |
| 71 - 80 | $ 5,700.00 |
| 81 - 90 | $ 6,200.00 |
| 91 - 100 | $ 6,700.00 |
| 101+ | $ 7,200.00 |

## SECTION 5 - PAYMENTS, COLLECTIONS, COMPENSATION

**5.** **Invoice Date. PROVIDER** shall provide **FACILITY** with an invoice by the tenth (10th) day of the month for services provided during the previous month. Please be advised that invoices

Compass Initials __GG__
Facility Initials _____



are due within 30 days upon receipt. We request and expect payment of our statements on a current basis, since delayed payment adds to our overall cost of providing services.

**5.1** Payment Obligation. **FACILITY** acknowledges and agrees that its obligation to pay **PROVIDER** for the billing services provided under this Agreement is separate and distinct from **FACILITY'S** ability to collect payment for such billing services from the patients, Medicare, Medicaid and/or any other insurance program or responsible party, except as otherwise noted herein, and in all cases, **FACILITY** shall be obligated to pay **PROVIDER** for the Services provided pursuant to this Agreement.

**5.2 We reserve the right to assess interest at one-and one-half percent (1.5%) per month (18% per annum) on any outstanding balance after thirty (30) days from the statement date.** Past due balance is considered a material breach of the agreement and **PROVIDER**, may, at its option, without notice, suspend or cancel service until the past due balance is paid in full.

**5.3** Any disputed charges may, upon notice to **PROVIDER,** be withheld for a period not to exceed thirty (30) days, during which time both parties shall attempt to reconcile the dispute.

**5.4** Collection Costs. **FACILITY** agrees to reimburse **PROVIDER** for any and all collection fees, legal/attorney fees, court costs, and other costs associated with **PROVIDER'S** attempt(s) to collect payment.

## SECTION 6 - FACILITY

**6.** **PROVIDER** shall be the sole provider for the services enumerated in this agreement. **FACILITY** agrees to use **PROVIDER** exclusively for Medicare services described herein, except for those services provided by **FACILITY** employees while agreement is in place.

**6.1** **FACILITY** shall not give, convey, transfer, assign, allow or release to another provider, person, entity, or organization any hardware or software provided by **PROVIDER.**

## SECTION 7 - NATURE OF RELATIONSHIP

**7.** Both parties agree that **PROVIDER** is not an agent, servant, or employee of the **FACILITY. PROVIDER** has no authority to obligate or bind the **FACILITY. PROVIDER** shall retain sole and absolute discretion and judgment in the manner and means of providing the services in Section 2 to the **FACILITY.**

## SECTION 8 - MODIFICATION AND TERMINATION

**8.** **PROVIDER** or **FACILITY** may from time to time, request changes in the scope of the services to be performed hereunder or the compensation payable thereof. Such changes, including

Compass Initials _GG_

Facility Initials _____



any change in the amount of **PROVIDER'S** compensation, shall be valid, only if incorporated as a written amendment to this agreement.

**8.1**       In the event for the need for termination, either party may elect to do so with a thirty (30) day notice via certified mail to the address listed in Section 9.0. Such terms include the ability for **FACILITY** to terminate this agreement for any reason at **FACILITY'S** discretion.

**8.2**       Upon failure of Facility to tender payment of all amounts due hereunder by the due date, Compass shall have the right to suspend service until such amounts are paid. If amounts due are not paid within 30 days of the due date Compass shall have the right to terminate this Agreement with five (5) days written notice to Facility.

## SECTION 9 - COMPASS RESOURCES

**9.**       Any property which is provided by **PROVIDER** for the purpose of fulfilling **PROVIDER** services shall be returned within five (5) working days of the termination of agreement, in an acceptable, working condition. Any damages, missing items, losses, alterations, or modifications regarding said property will be assessed and charged to the **FACILITY** at replacement value.

## SECTION 10 - NOTICES

**10.**       Any notices called for under the terms of this agreement shall be in writing and shall be considered effective as of the date of deposit with the United States Postal Service by certified or registered mail, postage prepaid, return receipt requested and addressed to the parties as follows:

**PROVIDER:**                              **FACILITY:**

Compass Medicare Billing LLC              Remarkable Healthcare of Seguin,
9065 Harmony Drive                         P.O. Box 164966
Midwest City, OK 73130                     Fort Worth, TX  76161-4966

## SECTION 11 - CONFIDENTIALITY

**11.**       It is understood and agreed that the services to be performed by **PROVIDER** are personal in character and **PROVIDER** agrees that all information or records obtained in the course of providing services to **FACILITY** be subject to strict confidentiality.

Compass Initials  _GG_
Facility Initials  _____



## SECTION 12 - WARRANTY AND WARRANTY EXCLUSIONS; LIMITATION OF LIABILITIES; INDEMNITY

**12.**      The sole warranty of the services provided by **PROVIDER** hereunder is that such services shall be provided in a manner consistent with the standard of care for that community and to the best ability of **PROVIDER**. All other express warranties are hereby expressly disclaimed and negated, and all implied warranties which may exist under the law with respect to the services performed by **PROVIDER** are hereby expressly disclaimed and negated; specifically, without limiting the generality of the foregoing, any implied warranty of merchantability or fitness for a particular purpose of the services provided by **PROVIDER** are hereby negated and disclaimed.

**12.1**      **PROVIDER** shall not be liable in any event for any incidental or consequential damages arising out of the services performed by **PROVIDER** hereunder, it being acknowledged and agreed that the remedies of **FACILITY** in the event of an alleged breach by **PROVIDER** are limited to the performance of the duties or refund of the price as negotiated.

**12.2**      **PROVIDER** shall not be responsible, nor liable for any delays and/or consequences whatsoever occasioned by the conduct, action(s), non-action(s) and/or omission(s) of any governmental entity, including, but not limited to the United States of America and any agency(ies) thereof, the State of Texas and any agency(ies) thereof, and particularly the Centers for Medicare and Medicaid Services (CMS) and Texas Medicaid , regarding any and all services, payments, actions and affiliations provided by governmental entity(ies). Further, **PROVIDER** shall not be responsible nor liable for any delays and/or consequences whatsoever occasioned by the conduct, action(s), non-action(s) and/or omission(s) of any third-party health care provider(s) or intermediary(ies) associated, in any manner with services rendered by **PROVIDER**.

**12.3**      **PROVIDER** shall not be held liable for and **FACILITY** expressly agrees to indemnify **PROVIDER** against any actions conducted by the **FACILITY** and/or its employees, which may be construed as deceitful or fraudulent. Likewise, **PROVIDER** shall indemnify the **FACILITY** for any actions conducted by **PROVIDER** employees who may be construed as deceitful and fraudulent. Neither party shall be held liable for any acts or omissions by the **FACILITY** or **PROVIDER** and their respective employees, which result in delays, audits, investigations, penalties, or other actions by any governmental or related entity.

It is agreed between the parties hereto that should any courses of action as to construe this agreement, interpret its covenants or enforce provisions thereof arise, both Parties will submit to binding arbitration in Oklahoma County, Oklahoma. It is further agreed that in the event of a breach by **PROVIDER** of its obligations hereunder, the sole and exclusive remedy of **FACILITY** in binding arbitration shall be to require **PROVIDER** to re-perform the alleged faulty services within the federally allowed time frame for claims to 1) minimize any potential losses, 2) avoid federal

Compass Initials  *GG*

Facility Initials  _____



penalties; 3) recoup any lost funds from non-filed claims and reports; at the cost to **PROVIDER** or to refund the portion of the fees paid for those services. It is expressly acknowledged that **PROVIDER** is not liable for any result or consequence which arises from **FACILITY'S** failure to comply with the procedures provided to **FACILITY** by **PROVIDER** for the purpose of accurate and complete billing of Medicare.

## SECTION 13 - GOVERNING LAW

**13.**    This agreement is executed under and shall be construed and enforced according to laws of the State of Oklahoma. **FACILITY** agrees that it is subject to the personal jurisdiction of the State and Federal Courts of Oklahoma in any action by **PROVIDER** to enforce the terms hereof.

## SECTION 14 - CIVIL RIGHTS

**14.**    **PROVIDER** agrees to comply with Title VI of the Civil Rights Act of 1964 and all requirements imposed by or pursuant to the regulation of the Department of Health, Education and Welfare (45 C.F.R. Part 90) issued pursuant to that Title, to the end that no person in the United States shall, on the ground of race, color, sex, age, disability, national origin or Veteran status be excluded from participation in, be denied benefits, or be otherwise subjected to discrimination under any program or activity for which federal funds are used in support of **PROVIDER** activities.

**14.1**    This agreement constitutes the entire agreement between the parties with respect to the transactions contemplated hereby and supersedes all prior agreements, arrangements or undertakings relating to the subject matter hereof. No covenant or condition not expressed in this agreement shall be deemed to interpret, change, or restrict this agreement. This agreement may be amended only in writing signed by all of the parties hereto.

## SECTION 15 - HIPAA COMPLIANCE

**15.**    **PROVIDER** will appropriately safeguard all data that is protected health information, as defined in the Health Insurance Portability and Accountability Act of 1996, as it may be amended from time to time ("HIPAA"). **PROVIDER** shall be permitted to use and disclose the protected health information as follows. **PROVIDER** may use and disclose protected health information (i) to carry out billing operations and payment or health care operations, as contemplated by this Agreement.  With respect to information it has received from **FACILITY, PROVIDER** will:

**15.1**    Not use or further disclose the information other than as permitted or required by this Agreement, without consent of FACILIY, or as required by law;

Compass Initials _GG_
Facility Initials _____



**15.2** Use appropriate safeguards to prevent use or disclosure of the information other than as provided for by this Agreement, without consent of FACIITY;

**15.3** Report to **FACILITY** any use or disclosure of the information not provided for by this Agreement of which **PROVIDER** becomes aware;

**15.4** Ensure that any agents, including a subcontractor, to whom **PROVIDER** provides protected health information received from, or created or received by **PROVIDER** on behalf of, **FACILITY** agrees to the same restrictions and conditions that apply to **FACILITY** with respect to such information;

**15.5** Make available protected health information in accordance with 45 CFR § 164.254;

**15.6** Make available protected health information for amendment and incorporate any amendments to protected health information in accordance with 45 CFR § 164.526;

**15.7** Make available the information required to provide an accounting of disclosures in accordance with 45 CFR §528;

**15.8** Make its internal practices, books and records relating to the use and disclosure of protected health information received from, or created or received by **PROVIDER** on behalf of, **FACILITY** available to the Secretary of Health and Human Services for purposes of determining **FACILITY**'S compliance with 45 CFR §§ 164.500 - 534; and

**15.9** At termination of this Agreement, if feasible, return or destroy all protected health information received from, or created or received by **PROVIDER** on behalf of, **FACILITY** that **PROVIDER** still maintains in any form and retain no copies of such information, or if such return or destruction is not feasible, extend the precautions of this Agreement to the information and limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible.

**15.10** **PROVIDER** may disclose the information it has received from **FACILITY** for such purposes: (a) as required by law. or (b) to other person(s) who give reasonable assurances to **PROVIDER** that the information will be held confidentially and used or further disclosed only as required by law or for the purpose for which it was disclosed to such person, and that such person(s) will notify **PROVIDER** of any instances of which it is aware in which the confidentiality of the information has been breached.

Compass Initials _*GG*_

Facility Initials _____



In witness hereto, the parties hereto have read, understand, and agree to all terms set forth herein and caused this agreement to be executed and signed by their duly authorized officers.

**Compass Medicare Billing LLC**

Effective this ___**1/9/24**_____

_Greg Guymon_____1/9/24_____
Signature & Date

Greg Guymon, President

Facility

_____1/9/24_____
Signature & Date

__Laurie Beth McPike, President/CEO_____
Printed Name & Title

Compass Initials _GG__

Facility Initials _____

**Addendum A**

Compass Initials _GG_

Facility Initials _____